Colt Industries, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Robert V. Eardley, Respondents.

Argued May 5, 1980, before Judges WILKINSON, JR., CRAIG and MACPHAIL, sitting as a panel of three.

*Joseph A. Fricker, Jr.,* for petitioner.

*William R. Caroselli, McArdle, Caroselli, Spagnolli & Beachler,* for respondent.

OPINION BY JUDGE CRAIG, June 24, 1980:

Colt Industries (employer) appeals from a decision of the Workmen's Compensation Appeal Board which affirmed a referee's decision that Robert V. Eardley (claimant) was eligible to receive compensation under Sections 108(k) and 108(n) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. §27.1(k) and (n), because he was disabled by an occupational disease.

From April 14, 1968 through March 24, 1976 the employer employed claimant in the hot strip mill as a crane operator. The findings of fact, set forth verbatim in a footnote,[1] reveal the types of crane operated by claimant, the duration of claimant's operation

---

[1] The pertinet findings of fact are as follows:

8. The claimant was then employed as a crane operator from 1951 to July 24, 1964 and during said period operated the following cranes: Slabyard Crane—117 weeks; 10 Ton Crane—116 weeks; 15 Ton Crane—233 weeks; 60 Ton Crane—4 weeks.

. . . .

of each crane and that the employee was exposed to a silica hazard during the time he operated each crane.

Claimant's duties as a crane operator required that he work in the slab building in addition to the hot strip mill. The testimony of Jess Finley, the superintendent of the hot strip mill, corroborated claimant's testimony that the conditions in these buildings were very dusty and that the claimant often had to open the windows of his crane cab in order to operate

10. The claimant was then employed as a crane operator from April 14, 1968 thru March 24, 1976, inclusive, and during said period operated the following cranes; 10 Ton Crane—173 weeks; Slabyard Crane—50 weeks; 60 Ton Crane—132 weeks.

11. The 60 ton crane is air conditioned and operates over the hot strip mill and is utilized for changing scrap boxes, roll changes, mill repairs, repairs and servicing batch furnaces, etc. At times windows are broken and the craneman may open a window for better visability [sic]. The claimant during the intermittent periods that he was operating the crane over the area where batch furnaces were being torn down or rebuilt was exposed to the hazard of silica dust emanating from said operations.

12. The 10 ton crane was not air conditioned and operated primarily in the ingot yard in proximity to the batch furnaces. It was utilized to strip ingots from the molds and preparing and moving slab charges in the batch furnace area. The claimant during his employment as a crane operator on the 10 ton crane was exposed to the hazard of silica dust emanating from the stripping operations and tearing down and rebuilding of batch furnaces.

13. The slabyard crane was not air conditioned and operated in the slab storage and conditioning building. It was utilized to take slabs off the mill and place them on hot beds, loading scrap, unloading slab cars, etc. Slabs were ground and scarfed in the slabyard and conditioning building. The claimant during his employment as a slabyard crane operator was exposed to the hazard of silica dust emanating from the grinding and scarfing operations being performed in his work area. Eight automatic grinders were in operation as well as periodic scarfing.

the crane safely. Moreover, there was testimony that the material heated in the buildings contained silicon.

Resolving conflicting medical testimony in favor of the claimant, the referee found that as of July 23, 1976, the claimant was totally disabled by pneumoconiosis, either silicosis or mixed dust pneumoconiosis.

However, on appeal the employer contends that the record is devoid of sufficient competent evidence to support the referee's decision. We disagree.

In the case before us, the medical experts for the parties provided conflicting though competent medical testimony. Such a circumstance requires the referee to exercise his discretion in determining the credibility of the testimony given. The credibility of witnesses, including medical witnesses and the relative weight to be given to their respective testimony is exclusively for the referee, in his role as factfinder, to determine. Furthermore, the referee is not required to state his reason for accepting one medical opinion over another opinion. The fact that the referee is inclined to believe one opinion over another is sufficient. *City of Hazleton v. Workmen's Compensation Appeal Board*, 35 Pa. Commonwealth Ct. 477, 386 A.2d 1067 (1978).

The employer further contends that the referee erred by failing to consider the testimony of one Mr. Finley. We find no merit in this argument. Failure to mention testimony does not compel a conclusion that it was not considered. *Locastro v. Workmen's Compensation Appeal Board*, 32 Pa. Commonwealth Ct. 390, 379 A.2d 668 (1977).

Accordingly, we affirm the decision of the Workmen's Compensation Appeal Board.

## Order

And Now, this 24th day of June, 1980, the order of the Workmen's Compensation Appeal Board, Docket No. A-75249, dated February 1, 1979, is af-

300

firmed, and employer's appeal dismissed. Accordingly, it is ordered that judgment be entered in favor of the claimant, Robert V. Eardley, and against Colt Industries, self-insured, in the following amounts: (1) Compensation in the amount of $187.00 per week, beginning July 23, 1976 and continuing into the indefinite future, however within the terms and limitations of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. (2) All deferred payments of compensation shall bear interest at the rate of 10 percent per annum. (3) Colt is further directed to pay the claimant, through his counsel, for reasonable costs of prosecution incurred in the total amount of $323.50. (4) Colt is ordered to deduct from any and all payments to the claimant $37.40 for each week of compensation that becomes due and payable to the claimant during the period beginning on July 23, 1977 continuing through January 18, 1979, inclusive, to William R. Caroselli, Esquire as an approved fee for his representation of him in these proceedings.