552 A.2d 756

Margaret Brandon, Petitioner *v.* Workmen's Compensation Appeal Board (Retreat State Hospital), Respondents.

Submitted on briefs June 14, 1988, to Judges BARRY and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Nicholas S. Mattise, Robert W. Munley, P.C.,* for petitioner.

*Daniel A. Miscavige,* for respondent, State Workmen's Insurance Fund.

OPINION BY SENIOR JUDGE NARICK, January 11, 1989:

Margaret G. Brandon (Claimant) has petitioned for review of an order of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's denial of workmen's compensation benefits based on a recurrence of her compensable injury.

Claimant was injured on June 26, 1979 when she tripped in a hole in the parking lot at Retreat State Hospital (Employer). She sustained injuries to her left ankle, left knee and lower back for which she received workmen's compensation payments pursuant to agreement. She ultimately required surgery on her left knee. Following this surgery, her treating physician, Dr. Raklewicz, released her to return to work on September 26, 1980. Thereafter, she signed a final receipt.

On June 25, 1982, Claimant filed a claim petition, seeking additional compensation for total disability due to the June 26, 1979 injury, dating from May 1981.

The case was assigned to a workmen's compensation referee, who treated the claim petition as a petition to set aside final receipt, and denied the petition. The Board, while affirming the referee's refusal to grant a petition to set aside final receipt, remanded for the referee to consider whether the Claimant had suffered a recurrence of her initial injury so as to entitle her to benefits.[1] The parties agreed that no additional evi-

---

[1] The Board was undoubtedly correct in remanding. The claim petition alleged a disability beginning in May 1981, some eight months after Claimant had returned to work following her surgery. As the Board noted, if relief is possible based upon the evidence presented, then it may be granted under a different section from that invoked by a claimant. *See, e.g., Children's Hospital of Philadelphia v. Workmen's Compensation Appeal Board (Washington)* 120 Pa. Commonwealth Ct. 1, 547 A.2d 870 (1988). Here, Claimant's petition should have been treated as a petition for reinstatement of benefits under Section 413 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as*

dence was required[2] and submitted the matter to the referee, who decided that Claimant had failed to meet her burden of proving a recurrence. The Board affirmed, and the Claimant's appeal from that order is now before us.[3]

The essence of Claimant's argument is that the referee's findings are not supported by substantial competent evidence. The pertinent findings are as follows:

It is elementary that an injured employe seeking reinstatement of benefits has the burden of proving the causal connection between the current condition and the prior work-related injury. There is, in fact, a need for unequivocal medical testimony to establish a continuing disability, especially in those cases where the Claimant resumed work as was the case here. There is no dispute that Claimant returned to her work at Retreat State Hospital with no loss of earnings, and continued to work there until a later point in time.

The medical testimony of Dr. Raklewicz is unrefuted in terms of the fact that he found no evidence of continued disability, and, rather, indicated that the Claimant's sole problem result-

*amended,* 77 P.S. §772, as she alleged an increase or recurrence of her disability.

[2] The evidence presented in this case consisted of the deposition testimony of the Claimant, who had moved to Oklahoma in June of 1981, and the depositions of two physicians. Claimant presented the testimony of Dr. Roger Mueller, her treating physician in Oklahoma. The Employer presented the testimony of Dr. Michael Raklewicz, who had performed the surgery on Claimant's knee in 1980.

[3] Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or the findings of fact are supported by substantial competent evidence. *Children's Hospital.*

ed from a congenitally unrelated condition, in terms of a condition not related to her work injury of June 1979.

Clearly, here, there is, in fact, no obvious causal relationship between a work related incident and a disabling injury, and, thus, there must be unequivocal medical testimony to establish causation.

If there was a pre-existing condition here, then the Claimant, under Law, has the burden of establishing, by competent medical evidence, that the disability resulted from employment rather than from the natural progression of a pre-existing condition.

Two factors weigh heavily in the Referee's mind as it relates to the conclusion which he is going to reach in this matter, and that is the competent medical evidence of Dr. Raklewicz which indicated that the Claimant's disability, if any, is not related to work, but rather is due to a congenital condition, and the other fact, that Claimant returned to her job at Retreat State Hospital, and worked there until she and her family moved in 1981.

There is no evidence that the discontinuation of work at Retreat State Hospital was brought about by anything other than the voluntary moving from the area. There is no evidence that she could not perform this job, and that there was some impairment, and which impairment affected her ability to earn wages.

These two salient facts lead the Referee to conclude that Claimant has not established, from this record, that she is entitled to a reinstatement of benefits because of her recurrence of disability from her injury of June 26, 1979.

As Claimant points out, there are several problems with the referee's findings and ultimate conclusions. The issue before the referee on remand, as pointed out above, was whether the Claimant had proven a *recurrence* of her injury. The Claimant had the burden to prove that her disability had increased or recurred subsequent to the date of the prior award. *Children's Hospital.* Where the causal relationship is not obvious, the subsequent period of disability must be linked to the work-related injury by unequivocal medical testimony. *Id.* It is obvious that the referee held the Claimant to a stricter burden, requiring her to prove by unequivocal medical testimony that her disability *continued* after her return to work in September 1980. While the question of whether a disability continues[4] after one has signed a final receipt is pertinent to the question of whether a final receipt should be set aside, it is not the germane inquiry when considering whether the disability has recurred at a later date.

The fact that the referee relied upon the medical testimony of Dr. Raklewicz is indicative of this error. Dr. Raklewicz was the physician who had performed the arthroscopic surgery on Claimant's knee. In September of 1980, he released her to return to work and testified that he considered her to be fully recovered *at that time.* When asked if he had seen the Claimant after September 24, 1980, Dr. Raklewicz responded: "According to my notes I saw her once, May of 1981. The dictation from that follow-up visit was lost and I really—other than taking an X-ray of her [left] knee, I

---

[4] It is well settled that in a petition to set aside a final receipt, the claimant bears the burden of proving by sufficient credible evidence that all disability attributable to the injury had not, in fact, terminated at the time the final receipt was signed. *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.),* 86 Pa. Commonwealth Ct. 28, 483 A.2d 593 (1984).

don't really recall, but I didn't see her subsequent to that." Raklewicz deposition p. 5. Significantly, Claimant had alleged a recurrence of her injury in May 1981.

Because Dr. Raklewicz's testimony specifically related to that period of time pre-dating Claimant's alleged recurrence, his testimony was simply irrelevant to the issue before the referee, and the referee erred as a matter of law in relying upon it.[5]

In keeping with his apparent analysis of the criteria used to set aside a final receipt, the referee emphasized the fact that Claimant returned to her job in September 1980 and worked until her voluntary move to Oklahoma to accompany her husband when he got a job there.[6] The referee specifically found that there was no evidence to show that Claimant's discontinuance of her work was brought about by anything other than her voluntary relocation. While it is true that Claimant did not present medical evidence of her disability until after her move,[7] that factor relates to the timing, rather than

---

[5] The referee also purported to rely upon Dr. Raklewicz's testimony for the proposition that Claimant's disability, if any, was due solely to a congenital problem unrelated to her work injury. There is absolutely no support in the doctor's testimony for that finding. Dr. Raklewicz never mentioned a congenital problem at any point during his deposition. Claimant's treating physician, Dr. Mueller, *did* discuss a congenital problem with the ligaments in Claimant's knee, but stated that this condition alone would not necessarily be painful.

[6] A claimant's returning to work with no loss of earning power and no obvious residual disability is significant in the context of a petition to set aside a final receipt, because such a claimant will be required to prove by unequivocal medical evidence that his disability had not terminated at the time he signed the final receipt in order to have the receipt set aside. *See Mellor v. Workmen's Compensation Appeal Board (Wilson Tires, Inc.),* 102 Pa. Commonwealth Ct. 504, 518 A.2d 1308 (1986).

[7] Claimant testified that she went out on sick leave in April or May 1981, when she began to have problems, and that she did not

to the fact of disability. Claimant did present Dr. Mueller's testimony, who first saw her on June 11, 1981, shortly after her move to Oklahoma. He attributed Claimant's disability[8] to the twisting injury in June of 1979. Dr. Mueller's testimony, if credited by the factfinder, could provide the substantial competent[9] evidence necessary for Claimant to meet her burden of proof on this issue. Because such findings are lacking, we are required to remand.

On remand, the fact-finder should be mindful of three points. Firstly, the fact that Claimant voluntarily moved to Oklahoma has no direct bearing on the issue of the recurrence of her injury. Claimant may still recover if she establishes that she suffered a loss of earn-

---

return to her job at Retreat State Hospital after that. She stated that she saw Dr. Raklewicz and that he prescribed physical therapy. Unfortunately, while the doctor did see her and take an X-ray, he lost the notes of her visit and was unable to recall its purpose.

[8] Dr. Mueller testified that he would consider Claimant temporarily totally disabled from a job involving bending, squatting or lifting from the time of his initial visit until July 1982.

[9] Lest there be a question on remand, we have reviewed Dr. Mueller's testimony and find it to be sufficiently unequivocal to support a finding of disability, notwithstanding the use of certain qualifiers. Although the doctor testified that Claimant's problems "could be related to that injury" (Mueller deposition p. 5) and that it was "possible" that her ligament "could heal looser than normal" (p. 9) following her surgery, he also stated that her congenital problem "doesn't necessarily mean it should hurt, but in combination with an injury of some sort, it would be consistent with the problem" (p. 10) and opined, within a reasonable degree of medical certainty, that "the cause of her problems and her present condition all extend back to a twisting injury back in June of 1979 when she stepped in a whole [sic]." (p. 13) Viewed as a whole, this testimony, if believed, would constitute sufficient competent evidence that Claimant suffered a recurrence of her work-related injury. See *Sheetz v. Workmen's Compensation Appeal Board (Firestone Tire and Rubber Co.)*, 104 Pa. Commonwealth Ct. 411, 522 A.2d 146 (1987).

ing power in either Oklahoma or Pennsylvania as a result of a recurrence of her injury.[10] Secondly, although Claimant originally alleged a recurrence of disability in May of 1981, that fact does not prevent Claimant from proving that she was disabled at a later date. Section 413 of the Act provides that

> [a] referee ... may, at any time, ... reinstate ... an original or supplemental agreement ... upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, ... [or] recurred ... . Such ... reinstatement ... shall be made as of the date upon which it is shown that the disability of the injured employe has increased ... [or] recurred ... .

Finally, nothing in this opinion is intended to usurp the function of the fact-finder. While we have highlighted those portions of the testimony which may, *if believed*, support a finding of a recurrence of disability, and have specified that Claimant's medical evidence is *competent* as a matter of law, we do not pretend to have resolved any credibility issues, which are within the sole province of the fact-finder. *See, e.g., Adamo v. Workmen's Compensation Appeal Board (Jameson Memorial Hospital)*, 87 Pa. Commonwealth Ct. 207, 486 A.2d 1065 (1985).

This case is remanded for findings in accordance with the foregoing opinion.

---

[10] We have held, albeit under different circumstances, that it is inappropriate to penalize a claimant for relocating when, as here, there is no evidence to indicate a lack of good faith in the move itself and in subsequent attempts to find work he is capable of performing. *See, e.g., Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 147, 377 A.2d 1304 (1977).

ORDER

AND NOW, this 11th day of January 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby vacated and the case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

Judge MACPHAIL did not participate in the decision in this case.