604 A.2d 1204

**Roy H. HARTNER, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (PHILLIPS MINE & MILL, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1991.

Decided March 3, 1992.

168

John F. Hooper, for petitioner.

Luann Haley, for respondent.

Before DOYLE and SMITH, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

This is an appeal by Roy H. Hartner (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision to deny Claimant's petition to reinstate total disability benefits.

The following facts are pertinent. While employed as a welder and burner for Phillips Mine & Mill, Inc. (Employer) Claimant sustained a back injury in January 1977. Surgery was performed and Claimant received total disability benefits until his return to work in May 1977. In April 1979 he reinjured his back at work and surgery was again performed. Claimant again received total disability benefits until his return to work on October 1, 1979. In October 1981 Claimant suffered a recurrence of back pain at work and was hospitalized for two weeks and was placed in a full body cast for six weeks. In July of 1982, however, Claimant's treating physician, Dr. Sheptak, completed a return to work evaluation form indicating that Claimant was able to return to sedentary work.

Thereafter, Claimant signed a supplemental receipt dated October 4, 1984 providing that he "was able to return to work with an average weekly wage of $333.00. The compensation rate should be reduced as follows: Employee's pre-injury wage was $438.00. $438.00 minus $333.00 equals $105.00. Two-thirds of $105.00 equals $70.00." Thus, Claimant was to receive partial disability benefits of $70.00 a week for five hundred weeks. The Supplemental Agreement also contained the following statement: "Claimant is still totally disabled but not from work related injury." Nowhere does any finding address this non-work-related disability; neither is it explained in the briefs.

Soon after entering into the Supplemental Agreement Claimant filed a petition for commutation. In connection with that petition the parties filed findings of fact upon which they had agreed. Among those findings were the following:

4. Supplemental Agreements for Compensation were entered between Claimant and the Defendant on October 4, 1984, wherein it was agreed that Claimant will be able to return to work earning $333.00 per week as of November 13, 1984. The Claimant's pre-injury wage was $438.00.

5. At the present time Claimant has the opportunity and requisite ability, with his wife, to reopen their in house ceramic shop and studio. Said business will involve the sale of ceramic pieces at retail and the teaching of ceramics to students. Claimant's profit will be approximately $100.00 per week.

6. In order to begin said business, Claimant will need to purchase equipment, inventory and advertising and desires to pay off the balance remaining on his automobile which will be used in the business.

7. Further, Claimant desires to pay off several accounts as follows:
 a) Mellon Bank Account .................. $ 672.16
 b) Montgomery Ward Account ............. $ 412.73
 c) Kaufmann's Account ................... $ 431.19
 d) Household Finance ..................... $2,028.00

8. Claimant desires to commute the compensation remaining in accordance with the Supplemental Agreement of October 4, 1984 to enable him to purchase the vehicle and pay off the aforesaid debts and invest in the aforesaid ceramic business: the Board finds that such purposes are in Claimant's best interest, specifically as the business will allow Claimant to earn income to support his family.

Thereafter, the Board, in an order issued on November 14, 1984, granted the commutation petition and Claimant was paid a lump sum of thirty-five thousand dollars with seven thousand dollars then to be subtracted as attorney fees.

On October 12, 1987, Claimant filed the reinstatement petition which is the subject of this litigation. In that petition he alleged that his back injury had continued to deteriorate and, consequently, that he is unable to provide gainful employment for himself. He also stated "Claimant seeks to reinstate that portion of his compensation benefit which was not subject to the commutation." It is apparently undisputed that Claimant never opened the ceramic shop; Claimant admits it in his brief.

 In a petition for reinstatement of total disability benefits the claimant must show that his disability has increased or recurred since the date of the prior agreement and that his physical condition has actually changed. *Tanski v. Workmen's Compensation Appeal Board (DeBaldo Bros., Inc.)*, 95 Pa.Commonwealth Ct. 556, 558 n. 2, 505 A.2d 1370, 1371 n. 2 (1986). With respect to the reinstatement petition, the referee specifically found Dr. Sheptak's testimony to be credible when the doctor opined that Claimant's work capacity had not changed since July of 1982 at which time Dr. Sheptak had completed the return-to-work evaluation form indicating Claimant could perform in a sedentary capacity. Based upon this finding the referee denied the reinstatement petition concluding that "Claimant has not met his burden of proof that he is now totally

disabled or that his condition is substantially different now, from his work injury, than it was when the commutation was granted." Claimant then appealed to the Board which affirmed the referee's order because Claimant had not presented unequivocal medical evidence that his condition had worsened. Appeal to this Court followed.

On appeal here Claimant contends first that the referee's finding that he had not proved a change in his medical condition is not supported by substantial evidence and second, that the referee and Board imposed an improper burden of proof upon him.[1]

 Claimant contends first that the referee's finding that he had not proved a change in condition is erroneous. We cannot agree. On cross-examination Dr. Sheptak testified as follows:

Q. Doctor, from a physical capability standpoint, would you agree from the information that we reviewed that his physical capabilities have not materially changed from the last time you saw him in ...—January of 1983 and the [last] time you saw him in March of '87?

A. Yes. He was still incapable of returning to his previous occupation.

Q. And there is basically no material gain or benefit or change?

A. There was no medical improvement. Is that what you're alluding to?

Q. Yes.

A. Yes.

(Deposition of Dr. Sheptak p. 17.)

. . . .

Q. ... With regard to the information that I've presented to you today as well as the information on the claimant's myelograms and CT scans, has there been any

---

1. Our scope of review here, where both parties have presented evidence, is limited to determining whether the referee's findings are supported by substantial evidence and whether the referee or Board committed a constitutional violation or legal error. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

medical change in his condition since you last saw him in January of 1983 as compared to his condition in March of '87?

A. No. He was approximately the same.

(*Id.* at p. 21).

While Claimant contends that, in effect, what Dr. Sheptak was opining was that Claimant's condition had not changed for the better, the testimony is subject to various interpretations. It is clear that a referee may accept the testimony of any witness in whole or in part. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa.Commonwealth Ct. 590, 377 A.2d 1007 (1977). Further, credibility and the weight of the evidence are within the referee's province to determine. *Colt Industries v. Workmen's Compensation Appeal Board*, 52 Pa.Commonwealth Ct. 296, 415 A.2d 972 (1980). And, on appeal the prevailing party is entitled to the benefit of the most favorable inferences to be drawn from the evidence. *American Refrigerator.* Thus, the fact that the evidence quoted may be subject to another interpretation is not dispositive of the issue. Dr. Sheptak clearly opined elsewhere in his deposition that when he last saw Claimant in March 1987 he could still perform sedentary work (deposition of Dr. Sheptak at 16, 23). The testimony also makes it clear that Dr. Sheptak did not believe Claimant's condition had changed since the doctor completed the July 1982 return-to-work form. We, thus, hold that the referee committed no error in finding that Claimant's condition had not worsened.

■ In an effort to secure relief Claimant contends, alternatively, that his petition for reinstatement should be treated as (1) a petition to reinstate suspended benefits or (2) a petition to set aside a final receipt or (3) a petition to review the commutation agreement. We shall examine each of these theories seriatim. In so doing it is useful to bear in mind that Claimant's admitted status when benefits were commuted was that he was *partially disabled* due to a work-related condition. We acknowledge, of course, that relief may be granted under a section of The Pennsylvania

Workmen's Compensation Act[2] (Act) different from that invoked by Claimant provided that relief is appropriate based on the evidence presented. *Brandon v. Workmen's Compensation Appeal Board (Retreat State Hospital)*, 122 Pa.Commonwealth Ct. 575, 576 n. 1, 552 A.2d 756, 757 n. 1 (1989). And, since we have concluded that the determination that Claimant had not proved a change in condition must stand, we now decide whether Claimant could prevail on some other theory.

## PETITION TO REINSTATE SUSPENDED COMPENSATION

▆▆▆ Under the Act, disability is synonymous with loss of earning power. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.)*, 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), *petition for allowance of appeal denied*, 522 Pa. 607, 562 A.2d 829 (1989). Thus, even though a claimant continues to suffer from a work-related disability, if that disability does not manifest itself in a loss of earnings then compensation must be suspended. *Id.* In order for a claimant to reinstate suspended benefits he must prove only that the reasons for the suspension no longer exist; he need not prove again that he is injured and partially disabled. *Venanzio v. Workmen's Compensation Appeal Board (Eastern Express)*, 88 Pa.Commonwealth Ct. 204, 489 A.2d 284 (1985). While at first blush Claimant's situation might appear to fit into this category, upon close scrutiny his analysis will not stand up.

▆▆▆ Claimant seeks to have that portion of his total disability benefits "not covered by" the commutation petition reinstated. The commutation benefits were paid for *partial* disability. If we accept Claimant's argument that he is entitled to the difference between payments made for partial disability and those he believes he is entitled to for total disability, we must accept the notion that one can earn part-time wages (partial disability) and at the same time earn no wages (total disability); that is to say, that he is

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

both totally disabled and partially disabled at the same time. This could never be. Since disability is synonymous with loss of earning power, one cannot be unable to earn *any* wages (totally disabled) and at the exact same time be capable of earning *some* wages (partially disabled).

If Claimant had been under a suspension and, although partially disabled, received no benefits at all because his "earning power"/wages were equal to or exceeded his pre-injury wage—hence a suspension—and his light-duty job was terminated through no fault of his own, he would be entitled to a reinstatement and, if Employer could not demonstrate that work was available which Claimant could perform, Claimant would be entitled to benefits at the same rate as benefits for total disability, because there would be no diminution for Claimant's "partial" or reduced wages. Furthermore, any period of initial total disability would not count against Claimant's 500 weeks of entitlement for partial disability,[3] and the time during which partial disability has been suspended would likewise suspend, or toll, the running of Claimant's 500 weeks of entitlement.[4] *See Palmiere v. Workmen's Compensation Appeal Board (East End Trucking)*, 91 Pa.Commonwealth Ct. 137, 496 A.2d 918 (1985). Because Claimant was not under a suspension, his petition cannot be characterized as one to reinstate total disability benefits following a suspension. Of course, the lump sum payment of $35,000 in commutation of Claimant's partial disability, totally compensated Claimant for all that he was entitled to (500 weeks) for his partial disability.

3. Section 306(b) of the Act, 77 P.S. § 512, provides in part:
"Should total disability be followed by partial disability, the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability."

4. Section 413 of the Act, 77 P.S. § 772, provides, in part, as follows:
And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

## PETITION TO SET ASIDE

Next, Claimant maintains that his petition should be treated as one to set aside a final receipt. A claimant seeking to set aside a final receipt must demonstrate by sufficient competent credible evidence that all disability attributable to his work-related injury had not ceased at the time he signed the final receipt. *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.)*, 86 Pa.Commonwealth Ct. 28, 483 A.2d 593 (1984). Claimant, while admitting that the analogy to his situation is "not perfect," maintains he has shown that all work-related disability had not ceased when the commutation was approved.

We agree the analysis is imperfect and further must conclude that it is unworkable. One who signs a final receipt acknowledges that he is no longer disabled. While later that acknowledgment might be shown to have been erroneous when made, the critical point is that *at the time the final receipt was signed the parties acknowledged that the claimant was no longer disabled* from the work-related injury. In this case when Claimant entered into a commutation agreement the parties agreed to just the opposite, that is, they agreed that Claimant remained partially disabled from his work-related injury. Thus, he was at that time, agreeing that he had not completely recovered from the work-related injury. And, inasmuch as an agreement that one is no longer disabled from the work-related injury is a necessary prerequisite to the setting aside of the final receipt, Claimant cannot prevail on this theory.

## PETITION TO REVIEW

Finally, Claimant asserts that we should treat his petition as one to review the commutation agreement. Under a petition to review a notice of compensation payable or a supplemental agreement the referee or Board must determine whether a mistake of fact or law was made when the notice or agreement was executed. *See* Section 413(a) of the Act, 77 P.S. § 771. The burden is on the party

seeking modification of the notice or agreement to prove that a material mistake of fact or law was made at the time the agreement was entered into. *Litton Industries v. Workmen's Compensation Appeal Board (Christner)*, 78 Pa.Commonwealth Ct. 79, 466 A.2d 1114 (1983). The petition to review theory might prove helpful to Claimant but for one problem. The Board found, and as we have already demonstrated, there is substantial evidence to support the finding, that Claimant's condition has not changed since July of 1982 when Dr. Sheptak stated that Claimant could return to work in a limited capacity. That being the case, we must conclude that Claimant was not totally disabled within the intendment of the Act when he signed the commutation agreement. Hence, there is no basis for setting aside the agreement on grounds of mistake. Claimant has received, by benefit payments for partial disability and the commutation of the remaining weeks of entitlement, benefits consistent with his partial disability and has not met the additional burden of showing that he is now totally disabled from his work-related injury.

In conclusion, we believe that the Board was correct in treating Claimant's petition as one to modify and in concluding that Claimant has not met his burden to show an increase from partial to total disability as a matter of law. Therefore, we are constrained to affirm the Board's order.

### ORDER

NOW, March 3, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.