**George YEAGER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SCHNEIDER, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1994.

Decided April 20, 1995.

Eric P. Betzner, for petitioner.

S. Todd Renner, for respondent.

Before COLINS, President Judge, DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and NEWMAN, JJ.

DOYLE,[1] Judge.

On October 27, 1982, George Yeager sustained a left knee injury in the course of his employment with Combustion Engineering, Inc., and, thereafter, received temporary total disability benefits.[2] On January 21, 1985, Yeager and Combustion executed a supplemental agreement acknowledging that Yeager's injury had resolved itself into a partial disability and further agreed that, as of January 20, 1985, Yeager had a weekly earning capacity of $587.45, which was $150.00 less than his preinjury wage of $737.45. That agreement gave Yeager partial disability

---

1. This case was reassigned to the writer on February 7, 1995.

2. Combustion Engineering, Inc. filed a Notice of Compensation Payable on January 7, 1983, which acknowledged that Claimant had average weekly wages of $737.45 and that total disability benefits in the amount of $284.00, the maximum allowable at that time, were payable.

benefits of $100.00 per week ($737.45 − $587.45 = $150 × ⅔ = $100) for 500 weeks under the provisions of Section 306(b) of the Pennsylvania Workers' Compensation Act[3] (Act). The 500–week period began on January 21, 1985 and ended on August 23, 1994. Contemporaneously with the supplemental agreement, Yeager filed a petition to have his partial disability benefits commuted and both parties executed a stipulation agreeing that the commutation should be granted. The Board granted Yeager's petition and he received a lump sum payment of $50,000.00, which represented the entire 500 weeks of his partial disability benefits without the normal statutory discount of 5% under Section 316 of the Act. 77 P.S. § 604.

Shortly thereafter, (the record does not reveal exactly when) Yeager became employed by Schneider, Inc. and, on March 27, 1987, he sustained an injury to his back and right foot in the course of his employment. This injury was unrelated to his October 1982 injury. Schneider issued a Notice of Compensation Payable stating that Yeager's average weekly wage was $717.00, which provided him with total disability benefits of $361.00 per week, the maximum weekly compensation rate in 1987.[4]

On, May 25, 1990, Yeager filed an occupational disease claim, his **third** claim, against 10 defendants, including Combustion Engineering and Schneider. It was during a December 3, 1990 hearing on his third claim that Yeager testified that he had received a commutation of partial disability benefits from Combustion Engineering and that he was also receiving total disability benefits from Schneider.

On January 25, 1991, Schneider filed a Petition for Review regarding the amount it was paying Yeager and asked for a "credit" for an overpayment of compensation benefits. In essence, Schneider asserted that Yeager's partial disability claim with Combustion Engineering and his total disability claim with Schneider were being paid concurrently; hence, adding the $100.00 partial disability payment and the $361.00 total disability payment, Yeager was receiving $461.00 per week, which was $100.00 in excess of the 1987 maximum benefit allowable. Schneider's application for a credit was, in reality, an attempt to recapture $100.00 per week in overpayments Schneider had been paying Yeager since 1987.[5]

A hearing was held before the referee who granted Schneider's petition to the extent that it suspended $100.00 of Yeager's *future* benefits from the date of the referee's decision, March 31, 1992, to the date on which his 500 weeks of partial disability benefits would expire, *viz.* August 23, 1994.[6] Yeager's benefits were, thereby, reduced to $261.00 for the above closed period of time. Referee Frederick F. Coffroth[7] reasoned that, while a claimant may receive benefits concurrently for a partial disability *and* for a separate and distinct second injury resulting in total disability, a claimant may not recover more in total benefits than the statewide average weekly wage, which is the maximum compensation payable. *See* Section 105.2 of the Act, 77 P.S. § 25.2. Further, Referee Coffroth held that the fact that Yeager's partial disability benefits were commuted was irrelevant in determining whether he was receiving in excess of the maximum weekly compensation, since, in his view, the commutation represented payments covering the 500 weeks of Yeager's partial disability. Referee Coffroth therefore concluded that Yeager was receiving $100.00 in excess of the maximum rate of compensation for the partial

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512.

**4.** The maximum weekly compensation rate for 1987 was published in 16 Pa.B. 5004 (1986).

**5.** Schneider suggested two methods of recouping the overpayment: (1) suspend Yeager's future benefits until the overpayment is recovered; or (2) adjust the calculation of his average weekly wage to reduce his future benefits.

**6.** The referee also held that any overpayments Schneider had already made to Yeager would have to be recovered from the Supersedeas Fund and could not be recovered by reducing Yeager's future payments. Schneider has not appealed from that part of the referee's order.

**7.** Prior to August 31, 1993 Workers' Compensation Judges were called referees. Section 14 of the Act of July 2, 1993, P.L. 190, 77 P.S. § 701 (Act 44).

disability period. Yeager appealed Referee Coffroth's order to the Board, which affirmed. This appeal followed.

Yeager contends that (1) the referee erred in determining that he was receiving concurrent benefits in excess of the maximum allowable compensation because he had received a lump sum commutation of $50,000.00 for the October 1982 first injury, and (2) that the referee erred in granting Schneider a reduction in the future benefits it was required to pay him.

 Commutations of benefits are permitted under Section 316 of the Act, 77 P.S. § 604, and a commutation is defined as the present payment of future benefits in one lump sum, instead of payment in periodic installments. 1 Alexander F. Barbieri, *Pennsylvania Workmen's Compensation and Occupational Disease* § 5.43 (1975). Generally, a commutation settles the obligations of the parties relating to the disability at issue. *Green v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 143, 401 A.2d 1243 (1979). *See also Shaftic v. Commonwealth Coal & Coke Co.*, 106 Pa.Superior Ct. 406, 413, 161 A. 773, 775 (1932) ("[c]ommutation is merely present payment . . . of sums successively payable; when the commutation . . . [was] made that much of the liability of the employer was satisfied. . . .").

We very recently considered the impact of a commutation of benefits on a claimant's right to total disability compensation from a subsequent second injury in *Tomlinson v. Workmen's Compensation Appeal Board (J. Baker, Inc.)*, 167 Pa.Commonwealth Ct. 329, 648 A.2d 96 (1994). The facts in *Tomlinson* were almost identical to those presented in this case, except for the amounts involved. In *Tomlinson*, the claimant sustained a back injury in 1985, for which she received temporary total disability benefits. In 1988, she executed a supplemental agreement acknowledging that her disability had changed from temporary total disability to partial disability. Her partial disability benefits were com-

muted and she received a single payment of $35,000.00, which represented 500 weeks of benefits at the rate of $70.00 per week beginning December 1988. However, in 1989, while working for a different employer, claimant sustained an additional work-related injury and filed a claim petition. A referee determined that claimant was entitled to total disability benefits of $133.00 per week for a closed period from December of 1989 to July of 1991, which period of time, of course, ran concurrently with the 500 weeks of partial disability, for which benefits had been commuted. Accordingly, the referee deducted $70.00 per week, representing the partial disability benefits from the $133.00 of total disability benefits, and awarded claimant $63.00 per week. The claimant appealed to the Board, which affirmed the referee.

On appeal, this Court held that the referee correctly determined that future partial disability payments represented by the commutation had to be considered when calculating the claimant's entitlement to benefits for a separate injury. However, we also held that, under the specific facts of that case, the referee should not have deducted the $70.00 from the claimant's total disability benefits **because the sum of those benefits were less than the appropriate statutory maximum.**[8]

 Under *Tomlinson*, when concurrent disability awards exceed the statutory maximum allowable benefit, a credit must be imposed for that amount of the combined benefits which exceeds the statutory maximum. The *Tomlinson* court reached that conclusion based on the long held rule that, while a claimant may receive benefits concurrently from separate and distinct injuries, the total compensation cannot exceed the amount of the maximum weekly compensation payable. Section 306(a) of the Act, 77 P.S. § 511; *Varghese v. Workmen's Compensation Appeal Board (M. Cardone Industries)*, 132 Pa.Commonwealth Ct. 482, 573 A.2d 630, *petition for allowance of appeal denied*, 527 Pa. 659, 593 A.2d 429 (1990).[9]

8. In footnote 4 of *Tomlinson* the Court noted that the statewide average weekly wage for 1989 was $399.00; for 1990—$419.00; and for 1991— $436.00.

9. In *Varghese*, a claimant was awarded total disability benefits for an orthopedic injury and total disability benefits for a separate pulmonary injury, sustained on a different date. The periods of

This principle, that a claimant may not receive in concurrent benefits more than the maximum statewide average weekly wage for a partial disability and a separate and distinct total disability, was applied in *Wentz v. Workmen's Compensation Appeal Board (Consolidated Freightways, Inc.),* —— Pa.Commonwealth Ct. ——, 654 A.2d 90 (1995). Although *Wentz* did not present a "chinese copy" factual scenario to the one in *Tomlinson* and the instant case, the principle is the same.

In *Wentz,* the claimant received total disability benefits which were later modified to partial disability benefits when the claimant accepted employment at an automobile dealership. While working at the dealership, the claimant sustained a new injury which rendered him totally disabled. Once claimant became totally disabled, the payment of his partial disability benefits was stayed by operation of law until his new total disability resolved. The claimant, however, filed a petition for commutation of his partial disability benefits; the referee denied that petition and the Board affirmed the referee. On appeal to his Court, we held that the claimant was not entitled to commute his partial disability benefits, because he was already totally disabled. The Court explained that a claimant could not be totally disabled and partially disabled at the same time, and followed the authority of *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.),* 146 Pa.Commonwealth Ct. 167, 604 A.2d 1204, *petition for allowance of appeal denied,* 531 Pa. 662, 613 A.2d 1210 (1992) (disability is synonymous with loss of earning power under the Act and one cannot be incapable of earning any wage while, at the exact same time, have *some* earning power).[10]

In the present case, following *Tomlinson* and *Wentz,* we hold that Referee Coffroth and the Board properly included Yeager's commuted partial disability benefits in the computation of Yeager's future total disability benefits. As noted above, *Tomlinson* is nearly "on all fours" with the present case. Both Yeager and the claimant in *Tomlinson* had partial disabilities, which benefits were commuted, and thereafter sustained new injuries while working for different employers which rendered them totally disabled. However, the difference between *Tomlinson* and the instant case is that the amounts of compensation received by the claimant in *Tomlinson* for both her partial and total disabilities did not exceed the maximum allowable compensation; the claimant was receiving $203.00 in combined partial and total disability benefits per week, considerably less than $399.00 maximum benefit in 1989.

Hence, Tomlinson could collect partial and total disability benefits simultaneously. In the instant case, however, Yeager's combined partial and total disability benefits total $461.00 per week, which exceeds the maximum allowable benefit ($361.00) by $100.00. 16 Pa.B. 5004 (1986). Therefore, since Yeager's combined total and partial disability benefits exceeded the statutory maximum by $100.00, the Referee properly credited that amount to Schneider.

Our holding in this matter is in complete accord with the intent of the Act.[11] Ignoring Yeager's partial disability benefits, solely because those benefits were commuted, would give him a windfall he would not otherwise receive if his partial disability benefits were paid in installments.[12] *Wentz; Hartner.*

---

disability for each injury were overlapping. On appeal, we held that, notwithstanding the fact that the claimant sustained two separate and distinct injuries, each of which rendered him totally disabled, the claimant could not concurrently collect benefits for each injury in excess of the maximum allowed by the Act.

**10.** But see footnote 14, *infra.*

**11.** The implication of allowing a claimant to be considered both totally and partially disabled at the same time was clearly explained by Arthur Larson in his Workers' Compensation treatise as follows:

[I]f [a claimant] is allowed to draw weekly benefits simultaneously from a permanent total and permanent partial award, it may become more profitable for him to be disabled than to be well—a situation which compensation always studiously avoids in order to prevent inducement to malingering.

Arthur Larson, *Law of Workers' Compensation,* § 59.41(a).

**12.** If Yeager were successful here, it would result in disparate benefits being paid to two claimants who had the same type of multiple injuries, first a partial disability followed by second total disability. What we prohibited in *Wentz, i.e.,* bene-

Moreover, our holding here is consistent with the recent amendment to the Act adopted by the General Assembly on July 2, 1993. Section 322 of the Act, 77 P.S. § 677 [13] provides as follows:

[I]t shall be unlawful for an employe receiving compensation under this act simultaneously from two or more employers or insurers during any period of total disability to receive total compensation in excess of the maximum benefit under this act. Nothing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, where an employe suffers from more than one injury while in the employ of more than one employer: Provided, however, [t]hat the total compensation paid shall not exceed the maximum weekly compensation payable under this act. . . .

Yeager argues that *Varghese*, which was relied upon by the *Tomlinson* Court for the principle that a claimant can have overlapping disability awards as long as the amounts received do not exceed the statutory maximum, may no longer be controlling. Yeager asserts that *Ingram v. W.J. Rainey, Inc.*, 127 Pa.Superior Ct. 481, 193 A. 335 (1937), the case precedent underlying *Varghese*, was "effectively overruled" by this Court in *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa.Commonwealth Ct. 553, 562 A.2d 419 (1989), *petition for allowance of appeal denied*, 525 Pa. 648, 581 A.2d 574 (1990). We disagree with that argument for the reasons which follow.

In *Ingram*, a claimant received a neck injury which rendered him temporarily totally disabled and, shortly thereafter when he returned to work, he suffered a specific loss injury by the loss of two of his fingers. For five months the claimant received the maximum allowable total disability benefit ($15.00 in 1937) and the maximum allowable specific loss benefit ($15.00) simultaneously, collect-

ing double the statutory maximum. The Superior Court held that the claimant could not receive more than the statutory maximum regardless of the fact that he had two injuries. The Superior Court reasoned as follows:

We do not say that there may never be concurrent awards for separate injuries suffered on different occasions. . . . *There is no express prohibition against concurrent payments,* but there is a positive limitation of the amount that any claimant may receive to $15.00 per week, regardless of the extent of his disability.

*Ingram*, 127 Pa.Superior Ct. at 488, 193 A. at 337–38 (emphasis added).

*Ingram*, therefore, is solid precedent for the principle which we follow today and clearly foreshadowed *Tomlinson* where the combined benefits for the total and partial disabilities did NOT exceed the maximum allowable benefit.

By comparison, in *Acme Markets*, the claimant was rendered totally disabled by an initial first injury and later sought specific loss benefits which resulted from an unrelated second injury. The claimant was ultimately granted benefits for both injuries and the referee and the Board held that the claimant could receive total disability benefits and specific loss benefits concurrently. On appeal to this Court we held only that there was nothing in the act prohibiting the receipt of total disability benefits concurrently with specific loss benefits, resulting from separate injuries.

Contrary to Yeager's argument, *Acme Markets* did not "effectively overrule" *Ingram;* in fact, the two cases are in complete harmony with each other because both *Acme Markets* and *Ingram* held that a claimant may collect specific loss and disability benefits concurrently. While *Ingram* explicitly holds that a claimant's total benefits may not

---

fits for a commutation of a partial disability, we would be giving to Yeager, thus treating two claimants who had identical injuries differently *solely* because of the time of their application for commutation.

It is possible, of course, for a claimant to have overlapping partial disabilities which combined

do not exceed the maximum statewide average weekly wage. *See Rotoblast v. Workmen's Compensation Appeal Board (Hockenberry),* 166 Pa.Commonwealth Ct. 383, 646 A.2d 678 (1994).

**13.** Section 322 was added by Section 13 of the Act of July 2, 1993, P.L. 190.

be in excess of the maximum weekly benefit, in *Acme Markets* the total amount of the combined benefits was never an issue. Because the total amount of compensation was never provided in *Acme Markets* and was never an issue, Yeager cannot reasonably infer from that decision that a claimant may collect more than the maximum benefit allowed by the Act.

Moreover, *even assuming arguendo* that the issue of whether combined specific loss benefits and total disability benefits may exceed the statewide maximum benefit is an open question, the present case, unlike *Ingram* and *Acme Markets*, does not involve specific loss benefits and we will not venture into such an unnecessary decision at this time.[14]

Yeager relies upon *Mason v. Workmen's Compensation Appeal Board (Acme Markets)*, 156 Pa.Commonwealth Ct. 10, 625 A.2d 1271 (1992), for the proposition that a claimant's commuted partial disability benefits should not be deemed to extend to the entire 500 week period. *Mason*, however, is distinguishable from the instant case because the sole issue in *Mason* was an issue of timeliness under Section 413 of the Act, 77 P.S. § 772, an issue not at all involved in this appeal. The Claimant in *Mason* was seeking to have benefits reinstated for a prior injury that was settled with a commutation, and Section 413 pertinently provides:

[N]o notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department *within three years after the date of the most recent payment of compensation* made prior to the filing of such petition.... (Emphasis added.)

The employer's final payment to claimant was the lump sum payment, and, thus, we concluded that the three year statute of limitations in Section 413 of the Act began to run on that date. Since the claimant filed his reinstatement petition six years after the final lump sum payment of his partial disability, we held that the claimant's petition was untimely. Section 413 speaks in terms of the date of *"payment"* for purposes of a time limitation, which is an issue totally distinct and totally inapposite to principles of law regarding the **amount** of compensation which concern us in this appeal. In *Mason*, this Court never considered the issue of whether commuted partial disability benefits should be deemed to extend throughout the 500 week disability period when determining a claimant's eligibility for additional benefits for a separate injury.

■ Yeager further argues that to include his commuted partial disability benefits when determining whether he is collecting more than the statutory maximum is contrary to

---

14. We note that at first glance it may appear theoretically impossible for a claimant to receive both total disability benefits and partial disability benefits at the same time, because a claimant may not be *totally* disabled in the *first* instance and therefore incapable of performing any work and partially disabled, and therefore capable of performing some work, at the very same time. However, when the *first* injury is only a partial disability, it is presumed that the claimant is incapable of earning only his or her pre-injury wage (otherwise a suspension is ordered) and capable of returning to the workforce but with a *reduced* earning capacity. Therefore, when calculating *benefits*, it is logically sound to allow a claimant to receive both, so long as the maximum benefit rate is not exceeded, because, had it not been for the claimant's first partial disability, he or she would have been receiving a higher wage when the claimant was subsequently totally disabled. Benefits should be capped only at the maximum permissible rate.

Cutting across the underlying theory that "disability" for workers' compensation purposes is the equivalent of the loss of earning capacity, are the cogent observations of Judge Narick in *Acme Markets:*

Benefits provided in Section 306(c) [specific loss] are statutorily prescribed amounts which are intended to include all disability emanating from or connected with the loss of or permanent injury to a member.... Such 'specific loss' benefits are not based on a loss of earning power, but on the loss of use of a particular member. Thus, an employee may receive specific loss benefits even while receiving full wages. In such a situation the employee may, for a specified period of time, receive wages and benefits in excess of his normal earnings. 127 Pa.Commonwealth Ct. at 562, 562 A.2d at 423.

Whether *Acme Markets* in the future will have a modifying effect on *Ingram* with respect to the issue of whether specific loss benefits, combined with partial or total disability benefits, may exceed the maximum weekly compensation, is specifically an issue not decided in this appeal.

public policy because it would discourage claimants from returning to the work force. Quite the contrary is true, however. If we agreed with Yeager's argument we would be allowing some claimants to receive more than the maximum amount of benefits permitted under the Act while other claimants, even those in similar circumstances but whose partial disability benefits are not commuted, would be held to the maximum amount of benefits allowed. *Wentz; Varghese.* This is contrary to the public policy expressed in Section 322 of the Act, quoted *supra,* which plainly prohibits such a result. In addition, our holding will in no way discourage claimants from returning to the work force, because a claimant who is partially disabled, *by definition,* has some earning power and *is* able to work. The claimant's reduced partial disability benefits already establishes that fact. *Hartner.*

Yeager's public policy argument is further blunted by a close consideration of Section 316 of the Act, 77 P.S. § 604, which provides in relevant part:

> The compensation contemplated by this article, may at any time be commuted by the board ... if it appears that such commutation will be for the best interests of the employe....

It is generally acknowledged that commutations are granted to claimants who usually either need to pay off debts or desire to start a business of their own (like Yeager). To accept Yeager's argument would work to the *disadvantage* of such claimants because employers, as a group, would realize that if they agreed to commute partial disability benefits, they might be obligated to pay more than the maximum benefits, and would, therefore, contest applications for commutation.[15]

Accordingly, the order of the Board is affirmed.

PELLEGRINI, J., concurs in the result only.

---

**15.** We note that commutations are generally disfavored and the Board is reluctant to grant a commutation for the following reasons:

> Boards have been reluctant to grant such commutations, since it is obviously the intent of the Act that a regular form of future income be provided in installments over long periods and

### ORDER

NOW, April 20, 1995, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

On appeal to this court, Yeager maintains that because he had received a lump sum commutation as a result of his prior injury, he was not receiving concurrent compensation payments in excess of the maximum amount prescribed by law following his second work-related injury. Yeager reasons that the limitations in sections 306(a) and 306(b) of the Act, 77 P.S. §§ 511 and 512, are upon the *receipt* of more than the maximum allowable compensation at any one time. Thus, Yeager argues that the referee and Board erred by basing their determinations on the fact that following his second injury, Yeager was still *receiving* $100 a week as a result of the October 17, 1982 work injury. On the contrary, Yeager contends that at the time he sustained his March 25, 1987 injury, he was not *receiving* any compensation payments as a result of his prior injury because he had already *received* all those benefits on January 24, 1985 when he was paid a lump sum of $50,000 in commutation of the partial disability payments related to his October 17, 1982 injury. Thus, Yeager concludes that where he was receiving no benefits at the time of his second injury, he could not have been receiving more than the maximum compensation rate following that injury.

Employer responds that because commutation is merely the sum of all future installments, Yeager should not, by virtue of the lump sum payment, be entitled to receive benefits for partial disability in addition to receiving benefits for total disability where, together, the amounts would exceed the statutory maximum. *Ingram v. W.J. Rainey,*

> even for a lifetime in some cases. Also employes are notoriously incapable of handling large sums of funds, and it is frequent that a large lump payment becomes dissipated or lost in one way or another....

1 Barbieri, § 5.43.

*Inc.*, 127 Pa.Superior Ct. 481, 193 A. 335, 338 (1937); *Varghese v. Workmen's Compensation Appeal Board (M. Cardone Industries)*, 132 Pa.Commonwealth Ct. 482, 573 A.2d 630 (1990), *appeal denied*, 527 Pa. 659, 593 A.2d 429 (1990). Employer also asserts that an employee cannot recover for partial and total disability simultaneously because it is impossible for an employee to be partially and totally disabled at the same time. *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.)*, 146 Pa.Commonwealth Ct. 167, 604 A.2d 1204 (1992), *appeal denied*, 531 Pa. 662, 613 A.2d 1210 (1992).

In resolving this dispute, the majority concludes that where a claimant suffers a permanent partial disability while working for one employer and the compensation is commuted and, during the period covered by the commuted partial disability payments, the claimant is rendered totally disabled as a result of a second injury with a different employer, that claimant, by being paid maximum total disability benefits for his second injury, is receiving compensation payments in excess of the maximum amount prescribed by law. I would hold that he is not and, thus, respectfully dissent.

I derive guidance from our decision in *Mason v. Workmen's Compensation Appeal Board (Acme Markets)*, 156 Pa.Commonwealth Ct. 10, 625 A.2d 1271 (1992), in which we considered the effect of a commutation of benefits on the timeliness of a claimant's reinstatement and modification petitions. In *Mason*, as here, a claimant petitioned for and was granted commutation of his partial disability benefits. The claimant received a lump sum payment of $25,000 in 1981; however, in 1987 and 1988 respectively, the

claimant filed a reinstatement petition and a modification petition, each alleging total disability as of 1981. The referee in *Mason* dismissed the petitions as time-barred, determining that the petitions exceeded the three year limitation provided by section 413(a) of the Act, 77 P.S. § 772.[1] However, on appeal, the Board concluded that the petitions were timely filed. We reversed on the timeliness issue, stating:

> Here, the $25,000 lump sum payment in commutation of the claimant's partial disability benefits effectively compensated him for the balance of his entitlement. Upon his receipt of all benefits payable pursuant to the commutation order, there was no remaining period during which such benefits might be resumed and no suspension of benefits to which a reinstatement petition could apply. Therefore, the petitions filed six years after the receipt of the last payment due were time barred.

*Mason*, 156 Pa.Commonwealth Ct. at 13, 625 A.2d at 1272–73 (citations omitted). Thus, despite recognizing that a commutation represents an advance payment of future partial disability entitlement, we held that a claimant should not be deemed to be receiving those payments throughout the period of entitlement; rather, we considered the partial disability fully paid on the date of the lump sum payment instead of pro-rating the payments represented by the lump sum amount over the 500 week period.[2] Applying the reasoning of *Mason* here, I would conclude that once Yeager received the $50,000 lump sum payment from Combustion Engineering, he was effectively compensated for the entirety of his 500 week entitlement period so that, in effect, any subsequent injury should be deemed to have occurred after the 500 weeks had elapsed.

1. Section 413(a) provides that a petition for modification or reinstatement must be filed within three years after the date of the most recent payment of compensation, provided that "where compensation has been suspended ... payments ... may be resumed at any time during the period for which compensation for partial disability is payable." 77 P.S. § 772.

2. Both Employer and the Majority contend that *Mason* is inapplicable here because *Mason* did not involve whether a claimant could collect more than the maximum benefits allowed by the

Act but, rather, concerned itself only with the timeliness of the claimant's petitions. While this distinction certainly exists, it does not prevent the *Mason* rationale from applying here. Clearly, in *Mason*, the untimeliness of the claimant's petition rested on our determination that the employer's last payment was on the date that the lump sum commutation was paid. Accepting Employer's analysis, the result in *Mason* would differ because the last payment would not be deemed to occur until the 500th and final week represented by the commutation payment.

Based on this analysis of *Mason*, I can readily distinguish *Ingram* and *Varghese*, cases relied on by the referee, the Board, the Employer and the Majority, because neither *Ingram* nor *Varghese* involved the commutation of benefits. In *Ingram*, a claimant sustained severe neck injuries in the course of his employment. Approximately one month later, he was involved in another accident with the same employer, this time suffering an entirely separate disability resulting from the permanent loss of the use of two fingers. The claimant received benefits for the disability attributable to his neck injury at the maximum rate of $15 a week for 25 weeks. In addition, the claimant and his employer entered into an agreement under which the claimant was paid compensation for the permanent loss of the use of his fingers at the rate of $15 a week for 35 weeks. Thus, for a period of approximately five months, *the claimant was receiving $30 per week for his total disability.* However, the court determined that under the Act, the claimant could only receive the statutory weekly maximum of $15, regardless of the character or extent of his disability, and, thus limited his benefits of $15 per week from the time of his first injury until the end of the longest period involved.[3]

In *Varghese*, the claimant sustained an orthopedic injury in the course of his employment and received compensation until his return to work, at which time he signed a final receipt. Subsequently, the claimant suffered a work-related pulmonary problem and ultimately had to stop working for the employer. The claimant then filed a petition for compensation with respect to his pulmonary illness and also filed a petition to set aside the final receipt in connection with his orthopedic injury. Initially, the referee awarded benefits pursuant to both petitions, resulting in overlapping awards. However, the Board's order suspended compensation for the pulmonary problem based on the claimant's receipt of compensation for his orthopedic injury, for which he received the higher compensation rate. We affirmed the Board, concluding that even though the claimant's periods of disability overlapped, he could not receive more than the maximum amount prescribed by the Act.

Thus, neither *Ingram* nor *Varghese* required the court to resort to a fiction that the claimant was receiving benefits from two claims simultaneously; instead, in both cases, the courts were concerned with a claimant's tangible, *concurrent* receipt of two separate payments for two separate disabling injuries, so that the claimants in those cases, unlike Yeager here, would actually *receive* and, thus, have available for use, two payments at the same time.

My determination is also supported by our decision in *Fahringer v. Workmen's Compensation Appeal Board (Green)*, 107 Pa.Commonwealth Ct. 597, 529 A.2d 56 (1987), in which we determined that an employer is not entitled to recover for overpayments made under an agreement which no longer exists. In *Fahringer*, an employee, pursuant to a 1977 notice of compensation payable, received total disability benefits through 1981 at the maximum weekly rate, based upon wages of $300.25 per week. In 1982, in accordance with a supplemental agreement, the employee received partial disability payments of $115.66 based on an earning power of $127.00 per week. In 1983, the parties stipulated that the employee's average weekly wage was $211.84, not $300.25, and, therefore, the correct rate for partial disability was $56.56. Because the miscalculation of the employee's weekly wage extended back to 1977, the employer sought to recoup $18,320.07, representing the overpayment from 1977 until 1983. We determined that the employer was entitled to restitution; however, we recognized that our power to award restitution was limited to correcting errors in

---

3. *Ingram* was the first appellate decision dealing with a situation in which a claimant while totally disabled and entitled to compensation under section 306(a) of the Act, 77 P.S. § 511, sustained injuries to another part of his person, in a separate incident but in the course of the same employment, which entitled him to compensation for specific loss under section 306(c) of the Act,

77 P.S. § 513. More recently, recognizing the unique nature of specific loss benefits, we reached a different conclusion in *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa.Commonwealth Ct. 553, 562 A.2d 419 (1989), *appeal denied*, 525 Pa. 648, 581 A.2d 574 (1990).

existing agreements. We then concluded that the original 1977 agreement no longer existed, having been replaced by the supplemental agreement in 1982, and, thus, the employer could not recover overpayments made under that first agreement but, rather, was restricted to restitution only under the later agreement.

I would apply similar reasoning here. We have held previously that once a commuted amount is paid, the relationship between employer and employee is settled and all obligations are satisfied. *Green v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 143, 401 A.2d 1243 (1979). In effect, once the commutation amount is paid, the agreement between the claimant and the employer paying the commutation ceases to exist. On this basis, Yeager's commutation agreement with Combustion Engineering, under which Yeager received $50,000 to fully compensate him for his first injury, no longer existed at the time of his second injury with Employer. Certainly, if the employer in *Fahringer*, which actually paid its employee more than the amount to which he was entitled for total disability, cannot recover those overpayments based on the non-existence of the agreement under which they were paid, Employer here, who has paid Yeager no more than the compensation payable for Yeager's total disability, is not entitled to be relieved of any "overpayment" based on an equally nonexistent agreement.

I note that the Majority relies on our recent cases of *Tomlinson v. Workmen's Compensation Appeal Board (J. Baker, Inc.)*, 167 Pa.Commonwealth Ct. 329, 648 A.2d 96 (1994) and *Wentz v. Workmen's Compensation Appeal Board (Consolidated Freightways*, Inc.), —— Pa.Commonwealth

Ct. ——, 654 A.2d 90 (1995), in support of its decision. Neither of these cases alter my view here and, in fact, I would have applied the reasoning set forth in this dissent in both *Tomlinson* and *Wentz*.

Accordingly, I would reverse.[4]

---

4. Yeager also presented several public policy arguments in support of his position, one of which merits comment here. Yeager contends that adopting Employer's position will discourage the practice of commuting benefits and, thereby prevent an employee's prompt return to work. However, I find this to be a rather strange argument because, in fact, commutation of benefits is discouraged under the Act. Rather, it is the obvious intent of the Act that an injured employee receive a regular form of future income, made in periodic installments as were the wages of the employee before the injury. Section 308 of the

Act, 77 P.S. § 601. The Act is remedial in nature and is, in effect, an income maintenance program. *Green.* The receipt of all future payments in one lump sum defeats this purpose because the employee may be incapable of handling the large sum and, thus, the payment may become dissipated or lost, resulting in the employee or his dependents becoming public charges. *See* Barbieri, Pa.Work.Comp. § 5.43. In keeping with the remedial purpose of the Act, I cannot agree that an employee who is totally disabled should receive less than the total disability payments to which he is entitled when, *in reality*, he is receiving no other benefits at that time.