**Terrance FULTON, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHOOL DISTRICT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 1997.

Decided Feb. 4, 1998.

Kathleen Kennedy, Philadelphia, for petitioner.

Brian J. Durkin, Philadelphia, for respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented in this appeal is whether the Workers' Compensation Judge (WCJ) erred by finding that Terrance Fulton[1] (Claimant) was not totally disabled when he and the Philadelphia School District (Employer) entered into a commutation agreement.

Claimant appeals from the order of the Workers' Compensation Appeal Board (Board) that affirmed the WCJ's decision dismissing Claimant's petition to reinstate total disability benefits.

On May 2, 1989, Claimant sustained an injury to his lower back while working for Employer as a maintenance trainee. On September 6, 1989, Employer issued a notice of compensation payable that provided total disability benefits at the weekly rate of $285.30 based upon Claimant's average weekly wage of $427.95. On February 7, 1991, Employer filed a termination petition alleging that Claimant had fully recovered from his work injury as of December 11, 1990, the date on which Claimant was initially examined by Employer's medical expert, John Williams, M.D. (Dr. Williams). On March 18, 1991, Employer also filed a petition to review medical treatment alleging that Claimant's ongoing medical treatment, as of December 11, 1990, was not reasonable, necessary, nor related to Claimant's work injury. Employer's two petitions were consolidated for a series of hearings before a WCJ.

On April 9, 1992, Claimant filed a commutation petition with the Board and signed a supplemental agreement and a stipulation of facts. In these documents, the parties agreed that Claimant was no longer totally disabled and that he now suffered a wage loss of only $75.00 per week. Accordingly, the parties agreed that Claimant's compensation be reduced to partial disability at a rate of $50.00 per week.[2] Also, the stipulation and commutation petition stated that Claimant wanted to receive his compensation as a lump sum payment of $25,000, an amount based on 500 weeks of partial disability at a weekly rate of $50.00. Moreover, Claimant agreed in the stipulation and commutation petition that a commutation was in Claimant's best interest because it would facilitate his return to the work force and provide him with a savings cushion. Finally, the supplemental agreement provided that, as of April 9, 1992, Employer had paid all of Claimant's medical expenses reasonably related to the work injury and that any other medical expenses were either unrelated to the work injury or unreasonable and unnecessary.

Claimant appeared before the Board on April 9, 1992, and acknowledged that he understood the effect of a commutation on his benefits and that he wanted a commutation. The Board then granted the commutation petition in accordance with the stipulation of facts. As a result, Claimant received a lump sum payment. On May 18, 1992, the parties appeared before the WCJ and submitted an additional stipulation of facts dated May 12, 1992 to resolve Employer's pending termination petition. Unlike the April 9, 1992 stipulation, the May 12, 1992 stipulation contained provisions similar to the provisions in the supplemental agreement relating to the payment and termination of Claimant's medical expenses. Based on the submitted stipulation and supplemental agreement, the WCJ ordered the withdrawal of Employer's termi-

---

1. Although the caption of this case refers to Claimant as Terrance Fulton, we note that Claimant's signature on the documents in the certified record appears as Terrence Fulton.

2. The $50.00 rate was based on Claimant's pre-injury average weekly wage of $427.95 minus $357.95 earning capacity times 2/3's.

nation petition and decreed that all medical expenses related to the work injury were paid.[3] Neither party appealed the order of the Board or the order of WCJ.

On September 16, 1992, Claimant filed a reinstatement petition in which he claimed that the stipulations of April 9, 1992 and May 12, 1992 were untrue and inaccurate because Claimant allegedly remained totally disabled. Also, Claimant requested that the stipulations and commutation be set aside and his compensation reinstated. Employer filed an answer denying Claimant's allegations. In support of his reinstatement petition, Claimant testified and submitted the deposition testimony of his treating physician, Dennis Zaslow, D.O. (Dr. Zaslow). Employer presented the deposition testimony of Dr. Williams.

In a decision circulated on July 20, 1994, the WCJ dismissed Claimant's reinstatement petition. In her decision, the WCJ specifically concluded that Claimant failed to prove that the stipulation he signed and the commutation agreement he entered into were in any way materially incorrect or false. The WCJ further concluded that Claimant was fully recovered from his May 2, 1989 work injury and was able to return to work as of December 11, 1990. Finally, the WCJ determined that Claimant failed to prove that he continued to be disabled as a result of his work injury. Claimant appealed to the Board and argued, in pertinent part, that the prior settlement agreement was null and void because it allegedly violated Section 407 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 731. In a July 2, 1997 decision, the Board

affirmed the WCJ's decision. The instant appeal followed.[4]

■ We initially recognize that the WCJ treated Claimant's petition as one for reinstatement as filed by Claimant rather than a petition to review and set aside the commutation agreement and/or the supplemental agreement, as provided by the first paragraph of Section 413 of the Act, 77 P.S. § 771,[5] on the basis of illegality under Section 407 of the Act. However, relief may be granted under a section of the Act different from that invoked by a claimant provided that relief is appropriate based on the evidence presented. *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.),* 146 Pa.Cmwlth. 167, 604 A.2d 1204, *appeal denied,* 531 Pa. 662, 613 A.2d 1210 (1992). In the instant case, Claimant specifically argued before the WCJ and the Board that the settlement between the parties should be reviewed and set aside because it was illegal under Section 407 of the Act.[6] Moreover, the WCJ found that Claimant failed to prove that the stipulations or the commutation agreement entered into between the parties were "materially incorrect" or false. Thus, despite the procedural reference to this case as a petition for reinstatement the WCJ actually treated this case as a petition to review the agreements of the parties under the first paragraph of Section 413 of the Act. Based on the evidence presented, the WCJ concluded that the settlement did not violate the Act and relief was not appropriate under Section 413.

Claimant contends that the stipulation of April 9, 1992 and the commutation agree-

---

**3.** On September 15, 1992, the WCJ also ordered the withdrawal of Employer's petition to review medical treatment.

**4.** Our scope of review is to determine whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**5.** The first paragraph of Section 413 of the Act gives the WCJ the authority to review and set aside agreements of the parties "if it be proved that such ... agreement was in any material respect incorrect." *Spears v. Workmen's Com-*

*pensation Appeal Board (Newman and Company, Inc.),* 85 Pa.Cmwlth. 346, 481 A.2d 1244 (1984).

**6.** Section 407 of the Act provides in pertinent part:

the employer ... and employe ... may agree upon the compensation payable to the employe ... under this act; but any agreement ... permitting a commutation of payments contrary to the provisions of this act, or varying the amount to be paid or the period during which compensation shall be payable as provided in this act, shall be wholly null and void

. . . . .

77 P.S. § 731.

ment based on that stipulation are null and void under Section 407 because there was no evidence that Claimant could return to work or that work was available to him as required by *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Prior to April 9, 1992, Claimant received total disability benefits of $285.30 per week pursuant to a notice of compensation payable, which acknowledged a work-related back injury and a wage loss of $427.95. On April 9, 1992, the parties executed a stipulation that provided for the reduction of Claimant's benefits from total disability to partial disability based on the parties' agreement that Claimant was able to return to the work force with a wage loss of only $75.00. However, Claimant points out that the stipulation acknowledged that he remained out of work and without income. Moreover, Claimant asserts that as of April 9, 1992, the only evidence of record was Claimant's unrefuted testimony that he continued to suffer residuals from his work injury, that he remained out of work, and that he continued to receive medical treatment related to his work injury. Thus, Claimant contends that the stipulation was false or incorrect and was therefore null and void under Section 407 of the Act.

■ Although parties may stipulate to the extent of a claimant's loss of earning power at a given time, the stipulation is null and void under Section 407 of the Act if the stipulation is false and adversely affects substantial rights to which a claimant is entitled under the Act. *Cahill v. Workmen's Compensation Appeal Board (North American Coal Corp.)*, 137 Pa.Cmwlth. 442, 586 A.2d 522 (1991), *reversed on other grounds*, 533 Pa. 223, 621 A.2d 101 (1993). Further, the advice of counsel cannot immunize a false stipulation, upon which a compensation agreement is premised, from the consequences set forth in Section 407 of the Act. *Id.* Claimant does not dispute that he signed the April 9, 1992 stipulation or that he wanted a commutation of his benefits in the form of a lump sum payment. Claimant also acknowledges that

counsel represented him on April 9, 1992 and that he discussed the commutation with his counsel. However, Claimant argues that these facts do not legalize the stipulation because the fact remains that Employer failed to show that Claimant's condition had changed or that Claimant was capable of returning to a then open job that was within his capabilities. We disagree.

■ With a petition to review a commutation agreement under Section 413 of the Act, the WCJ or the Board must determine whether a mistake of fact or law was made when the commutation agreement was executed. *Hartner.* The burden is on the party seeking to set aside the commutation agreement to prove that the agreement was false or materially incorrect. *Id.* Claimant's argument in the instant case assumes that he met his burden of proving that the commutation agreement was based on false information or a mistake; i.e., that he was still totally disabled as of April 9, 1992. However, the WCJ did not find Claimant's testimony or the testimony of his treating physician, Dr. Zaslow, credible. Rather, the WCJ specifically found credible the testimony of Employer's medical expert, Dr. Williams.

As the fact finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and the WCJ's findings will not be disturbed when they are supported by substantial, competent evidence.[7] *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa. Cmwlth. 164, 578 A.2d 83 (1990). In addition, the WCJ is free to accept or reject the testimony of any witness, including a medical expert, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921, *appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). On appeal, the prevailing party is entitled to the benefit of the most favorable inferences to be drawn from the evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa.Cmwlth. 590, 377 A.2d 1007 (1977). Although the WCJ decides questions of credibility, we must review the

---

7. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Gonzalez v. Workmen's* *Compensation Appeal Board (Penn Pad Co.)*, 143 Pa.Cmwlth. 177, 598 A.2d 650 (1991).

record to determine whether those decisions are supported by substantial evidence.

In the instant case, the WCJ accepted the testimony of Dr. Williams in its entirety and found that Claimant failed to prove that he was totally disabled as of April 9, 1992 when the Board granted the commutation. Dr. Williams, a board certified orthopedic surgeon, examined Claimant on December 11, 1990 and reexamined Claimant on January 14, 1993. Dr. Williams also reviewed Claimant's medical records and various diagnostic studies, which included an MRI. Dr. Williams testified that his examination and review of the diagnostic studies revealed no evidence of a herniated disc but showed definite evidence of pathology in the L4–5 area of Claimant's lower back and hip, consisting mainly of bone spurs.

Dr. Williams opined that the pathology in Claimant's lower back was directly and solely related to an incident in 1983 where Claimant was stabbed several times in the back. Moreover, a triple phase bone scan performed on Claimant on April 18, 1991 revealed no increased uptake in Claimant's lumbar spine, which should have appeared if Claimant was having significant pain in his lower back as Claimant reported during his examination. The only area that showed any increased uptake was Claimant's thigh where he was struck with a baseball bat in October 1990. Therefore, Dr. Williams concluded that Claimant had fully recovered from the work injury as of the examination on December 11, 1990. Dr. Williams also testified that his reexamination of Claimant on January 14, 1993 revealed no change in Claimant's medical condition from the first examination. Thus, Dr. Williams maintained that Claimant was fully recovered from the work injury and was fully capable of returning to his pre-injury position as of December 11, 1990.

The WCJ found Dr. Williams' testimony credible because he is board certified in orthopedic surgery and he was very thorough and detailed in his review of Claimant's medical records and examinations. On the other hand, the WCJ found the testimony of both Claimant and Dr. Zaslow was not credible. Claimant's testimony directly contradicted the stipulations of fact, the commutation agreement, and the supplemental agreement. Although Claimant admitted that his attorney had reviewed all of these documents with him before Claimant signed them, Claimant testified that he was totally disabled as of April 9, 1992. Claimant's testimony also contradicted the provision in the stipulation and commutation that he was capable of working with a wage loss of only $75.00. Further, although Claimant stated that he did not understand the documents, he told the Board members on April 9, 1992 that he understood the documents and that a commutation was in his best interest. Based on Claimant's contradictory testimony and extensive history of pre-existing and subsequent injuries, the WCJ was free to reject Claimant's testimony.

The WCJ found Dr. Zaslow's testimony unpersuasive because he is not board certified in orthopedic surgery and he did not review Claimant's complete medical history. Specifically, the WCJ found that Dr. Zaslow had no knowledge or records of Claimant's fractured hip in 1978, his 1983 stabbing incident, the fracture of Claimant's leg after being pushed down a flight of stairs in 1987, the assault on Claimant by two men wielding a 2–by–4 in October 1989, the assault on Claimant by four men in December 1989 where Claimant was beaten with a golf club, an assault on Claimant in October 1990 where he was struck in the leg with a baseball bat, and an assault on Claimant in January 1990. When Dr. Zaslow was asked on cross-examination about some of this history, he conceded that such various assaults and injuries could have aggravated or injured Claimant's lower back. Thus, the WCJ's rejection of Dr. Zaslow's testimony was justified.

█ Our review of the record reveals that the WCJ's finding that Claimant was fully recovered from his work-related injury as of December 11, 1990 was supported by substantial evidence mainly in the form of Dr. Williams' testimony. Based on that finding, the WCJ was free to conclude that Claimant was not totally disabled on April 9, 1992 when he agreed to the commutation of his benefits. Because Claimant failed to show that the commutation agreement was contrary to the Act, the WCJ properly denied Claimant's reinstatement petition.

Claimant also argues that the supplemental agreement and the stipulation of May 12,

1992 must also be set aside because these documents falsely stated that Claimant's medical expenses were paid or were unreasonable and unnecessary. In support, Claimant relies on the fact that the stipulation of April 9, 1992 and the commutation agreement acknowledged that Claimant remained partially disabled. Hence, Claimant asserts that Employer should have continued to pay his medical expenses because the expenses were causally related to the work injury and Employer did not succeed on a termination petition or review petition. However, Claimant's argument again ignores the WCJ's finding that Claimant was fully recovered from his work injury as of December 11, 1990. Because the WCJ's decision was based on substantial evidence, we will not disturb the WCJ's refusal to set aside any of the documents related to the commutation.

Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 4th day of February, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.