Madeline J. WELSH, Account of
Richard C. Welsh, Deceased,
Petitioner,

v.

STATE EMPLOYEES' RETIREMENT
BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 7, 2002.
Decided July 15, 2002.
Publication Ordered Oct. 15, 2002.

George H. Hoffman, Pittsburgh, for petitioner.

Salvatore A. Darigo, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and DOYLE, Senior Judge.

OPINION BY Judge SIMPSON.

Madeline J. Welsh (Beneficiary) petitions this Court for review of the order of the State Employees' Retirement Board (Board) that adopted the opinion of its hearing examiner and denied Beneficiary's request to change the retirement benefit option elected by her husband (Decedent) under the State Employees' Retirement Code (Retirement Code).[1] We affirm.

Decedent retired from state service as a nurse's aide at Mayview State Hospital on November 22, 1997, the day after his treating doctor, Adrienne Young, M.D. advised him that he had leukemia. Shortly thereafter, Dr. Young told Decedent that he would not live for more than approximately 6 to 12 months. Finding of Fact (F.F.) Nos. 4, 10. Decedent telephoned Marilyn Fenati (Fenati), a State Employee Retirement System (SERS) retirement counselor, and scheduled a retirement counseling session with her. When Decedent made his appointment with Fenati, he asked his wife to speak to Fenati, but Fenati declined to speak to anyone other than Decedent, the SERS member. F.F. Nos. 16, 17. Beneficiary reported that before the session Decedent did not receive a letter outlining his retirement options. F.F. No. 14.

Decedent attended his retirement counseling session alone. F.F. No. 44. Upon returning from that session with Fenati, Decedent reported to Beneficiary, who has multiple infirmities that confine her to a wheelchair, that she was "going to get his pension." Decedent told his stepdaughter that her mother would be taken care of by his retirement. Also, Decedent reported to his stepdaughter that he did not understand what the retirement counselor told him at the counseling session. Decedent

---

1. Act of March 1, 1974, P.L. 125, *as amended*, 71 Pa.C.S. §§ 5101–5956.

advised his stepdaughter that, upon his death, she should get in touch with Fenati, who would resolve things. F.F. Nos. 19, 20, 21.

Approximately two months after Decedent made his retirement benefit election during the session with Fenati, Dr. Young determined that Decedent's hearing aids were distorted. Decedent used those hearing aids to help him overcome his bilateral neurosensory deafness. Dr. Young testified that, when speaking to Decedent, it was necessary for the speaker to be face to face with him, to speak loudly and to make sure Decedent was looking straight at the speaker, as well as to check that the hearing aids were in place.[2] Dr. Young opined that the use of those older hearing aids, coupled with Decedent's hearing disability, resulted in Decedent's having difficulty in understanding intelligible speech at the time of his retirement counseling session. F.F. Nos. 8, 9. In addition, Dr. Young indicated that, "Decedent had a habit of covering up his various impairments when it was clear that he didn't understand what was being told to him." F.F. No. 11.

When Decedent's stepdaughter told Fenati of Decedent's June 1998 death, Fenati advised her that Decedent had opted for the wrong pension. F.F. No. 22. Beneficiary sought relief, and a hearing was scheduled.

Fenati testified[3] that Decedent made no comment to her concerning his election of Option 1, maximum single life annuity without a survivor's benefit, even after she repeatedly explained to him that that option, coupled with his $27,272.20 lump sum withdrawal, would leave no survivor benefits payable to a beneficiary, whether Decedent died in 6 weeks or 60 years. F.F. Nos. 29, 39, 40.

Fenati testified that she had no recollection of how many times she met with Decedent, that she noticed nothing unusual about his eyesight, had no knowledge of his severe hearing impairment, did not note any hearing aids, and described him as "just an average member." She remembered the session as just an "ordinary, regular retirement" session with nothing different about it whatsoever. F.F. Nos. 31, 32. At this retirement counseling session, Decedent signed all the necessary forms in the proper location and in a manner that did not appear unusual to Fenati. F.F. No. 36.

■■■ The hearing examiner determined that Fenati fully explained Decedent's rights and duties and discharged her obligations under the Retirement Code in an appropriate fashion. Conclusion of Law (C.L.) No. 13. In addition, he found Decedent did not lack the mental capacity to execute his retirement options on December 4, 1997, "although it is clear that [Decedent] may not have fully understood what was told to him on that date because of his physical disabilities." C.L. No 14.[4]

2. Decedent also had vision difficulties caused by partial retinal detachment, glaucoma, and cataracts. F.F. Nos. 5, 6, 7.

3. The hearing examiner received Fenati's testimony by way of her June 30, 2000 deposition. Fenati referred to a September 2, 1998 memo she wrote about her December 4, 1997 retirement counseling session with Decedent.

4. In order to rebut the presumption of capacity, the challenger must present evidence of

mental incompetency that is clear, precise and convincing. *Elliott v. Clawson,* 416 Pa. 34, 204 A.2d 272 (1964). Mere mental weakness, if it does not amount to the inability to comprehend a contract and is without evidence of undue influence, is insufficient to set aside a contract. *Estate of McGovern v. State Employees' Retirement Bd.,* 512 Pa. 377, 517 A.2d 523 (1986). A presumption of mental incapacity does not arise merely because an

The hearing examiner determined that Decedent's lack of understanding was caused solely by his unwillingness to disclose his physical limitations to Fenati. C.L. No. 15.

The lack of authority to alter Decedent's retirement election is emphasized in the regulation quoted by the hearing examiner:

> Effective Election to Receive Benefit. A Member who terminates state service, who is eligible to withdraw his total accumulated deductions, or vested retirement rights, or receive an immediate annuity, shall, by exercising the election, be deemed to have made an **irrevocable choice** which may not be changed unless the change was made prior to the effective date of termination of service. (Emphasis in hearing examiner's original opinion).

4 Pa.Code § 249.7(d); Hearing examiner op. at p. 7.

■ Moreover, the hearing officer reviewed that the role of the retirement counselor is merely to explain the options available to the member and to answer questions about the choices the member must make. That role does not include making a detailed inquiry into the mental state, the physical and financial condition of the retiring member or to second-guess the member's choice. *Estate of McGovern v. State Employees' Retirement Bd.*, 512 Pa. 377, 517 A.2d 523 (1986); *Marron v. State Employees' Retirement Bd.*, 118 Pa. Cmwlth. 174, 544 A.2d 1095 (1988); C.L. Nos. 1–16.

The hearing officer also analyzed the law of mistake. Further, the hearing officer observed that the Retirement Code affords no authority for a beneficiary to change a retirement option. *Stevenson v. State Employees' Retirement Bd.*, 711 A.2d 533 (Pa.Cmwlth.1998). The hearing officer recommended that the Board deny Beneficiary's request to rescind Decedent's retirement option election and to allow Beneficiary to select another option.

In its opinion on appeal, the Board stated that it "carefully and independently" reviewed the briefs, exhibits, transcript and entire record of this proceeding and found appropriate the hearing examiner's findings of fact, discussion, conclusions of law and recommendations.

■ On appeal to this Court,[5] Beneficiary asserts that she established that the contract created by Decedent's election of retirement option 1 was the product of a mistake and that that mistake entitles her to rescind the contract, restore the status quo and then elect another retirement option. In particular, Beneficiary argues that Fenati knew or should have known of Decedent's hearing problems.

■ A party adversely affected by a mistake may receive relief if both parties are mistaken as to existing facts at the time of the contract's execution. *Ehrenzeller v. Chubb*, 171 Pa.Super. 460, 90 A.2d 286 (1952). Relief may only be granted if the mistake, (1) relates to the basis of the bargain, (2) materially effects the parties' performance, and (3) the mistake is not one where the injured party bore the risk.

---

unreasonable or unnatural disposition of property occurred. *Id.*

**5.** On appeal from a final adjudication of an administrative board, this Court's scope of review is limited to a determination of whether the board committed an error of law,

whether there has been a violation of constitutional rights, or whether necessary factual findings are supported by substantial evidence. *Simmonds v. State Employees' Retirement System*, 548 Pa. 219, 696 A.2d 801 (1997).

*Loyal Christian Benefit Assoc. v. Bender,* 342 Pa.Super. 614, 493 A.2d 760 (1985).

■ Here, Decedent chose an option that did not suit his needs. This mistake relates to the basis of the bargain and materially affects the parties' performance. There is no finding, however, that the mistake was mutual. On the contrary, findings supported by substantial evidence establish that a lack of understanding on Decedent's part was due solely to his acts or omissions. In addition, Decedent alone bore the risk that his option election would prove unsatisfactory. *See Estate of McGovern,* (SERS employee cannot substitute his or her judgment for that of member). For these reasons, the law of mutual mistake supports no relief for Beneficiary.

■ Similarly, the law of unilateral mistake does not support a remedy for Beneficiary. If a party to a contract knows or has reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed. *Lapio v. Robbins,* 729 A.2d 1229 (Pa.Super.1999). Here, there are no findings that at the time Decedent made his election Fenati knew or should have known his choice was a mistake, nor are such findings compelled by this record.

■ Next, Beneficiary contends that SERS' failure to provide an estimate letter was a violation of Decedent's due process rights which deprived him of the opportunity to review the complicated details of his retirement options.

Under the Retirement Code, SERS must advise a member of his available retirement options in writing. 71 Pa.C.S. § 5907(c.1). Although Beneficiary interprets this requirement to mean that the retirement estimate must be provided before the counseling session, this provision of the Retirement Code contains no time requirement. This section provides:

> In the case of any member terminating State service who is entitled to an annuity and who is not then a disability annuitant, the board shall advise such member in writing of any benefits to which he may be entitled under the provisions of this part and shall have the member prepare, on or before the date of termination of State service, one of the following three forms, a copy of which shall be given to the member and the original of which shall be filed with the board: [a description of each of the three retirement options follows].

77 Pa.C.S. § 5907(c.1). A reasonable interpretation of this plain language permits SERS to provide the written estimates while discussing them with the retiree at the counseling session. Here, though it may be that Decedent did not receive an estimate of his retirement benefits before he met with Fenati, the record establishes that Fenati's habit was to print out a copy of the estimate to review during the counseling session. SERS Ex. 21. Thus, the hearing officer's conclusion that Fenati discharged her obligations under the Retirement Code in an appropriate fashion is supported by substantial evidence.

■ SERS members have only those rights created by the Retirement Code. *Burris v. State Employes' Retirement Bd.,* 745 A.2d 704 (Pa.Cmwlth.2000); *Krill v. Public School Employes' Retirement Bd.,* 713 A.2d 132 (Pa.Cmwlth.1998). In cases interpreting the Retirement Code, this Court has consistently held that retirement benefit elections are final, binding, and absolute. *Crouse v. State Employes' Retirement System,* 729 A.2d 1268 (Pa. Cmwlth.1999) (Court denied retiree's request to change his election of a nondisability early retirement annuity in order to receive a disability annuity because re-

tiree had been counseled about those options before he made his choice).

In *Cosgrove v. State Employes' Retirement Bd.*, 665 A.2d 870 (Pa.Cmwlth.1995), retirees asserted that, when they received their retirement counseling, they were not informed of a special provision then available under the Retirement Code. Retirees argued that under this provision they had a choice to elect a higher "up-front" payment to be subsequently reduced when they were eligible to receive social security benefits. We held that the unequivocal language of the Retirement Code prevented a change in benefit plans *even if* inadequate retirement counseling misled the retirees. *See also Bittenbender v. State Employees' Retirement Bd.*, 154 Pa. Cmwlth. 11, 622 A.2d 403 (1992) (SERS not bound by a computation mistake its retirement counselor made when counseling retiree about those benefits).

 In addition, SERS is without authority to conduct detailed and invasive inquiries into a retiree's medical history and financial status. *Marron*, 118 Pa. Cmwlth. 174, 544 A.2d 1095 (1988). Nor can a SERS' employee substitute his or her judgment for that of the member. *Estate of McGovern.* The record here demonstrates that Fenati told Decedent at least four times that his retirement option election would leave survivors with none of his retirement funds after his death.

The law mandates a simple result in this difficult situation; it is, thus, this Court's duty to affirm the order of the Board.

### ORDER

AND NOW, this 15th day of July, 2002, the order of the State Employees' Retirement Board in the above-captioned matter is affirmed.