IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Murphy,                    :
                    Petitioner     :
                                   :
          v.                       :
                                   :
Workers' Compensation Appeal       :
Board (Upper Darby Township),      :    No. 1208 C.D. 2016
                    Respondent     :    Submitted: December 9, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: March 28, 2017


          Michael Murphy (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) June 21, 2016 order affirming the Workers' Compensation Judge's (WCJ) decision granting Claimant's Petition to Review Compensation Benefits (Review Petition) in part and denying Claimant's Petition to Reinstate Compensation Benefits (Reinstatement Petition). Claimant presents two issues for this Court's review: (1) whether substantial evidence supports the WCJ's determination that the Agreement for Compensation (Compensation Agreement) was not materially incorrect; and (2) whether the WCJ erred by failing to award Claimant litigation costs. After review, we affirm.

          On October 31, 2011, Claimant sustained a work-related injury after he tripped on steps and fell while employed by Upper Darby Township (Employer). By a Notice of Temporary Compensation Payable (NTCP), which subsequently converted to a Notice of Compensation Payable (NCP), Employer accepted

Claimant's work injury as a right shoulder and a right shin contusion. Subsequently, Employer issued the Compensation Agreement which provided that Claimant's disability for the October 31, 2011 work injury began on November 1, 2011 and ended on March 3, 2013; Claimant returned to work on March 4, 2013 to his pre-injury position and earnings without restrictions or residuals; and, Claimant's WC benefits were terminated as of March 4, 2013, in accordance with the WC Act (Act).[1]

On July 2, 2013, Claimant filed the Reinstatement Petition alleging that as of March 4, 2013, the Compensation Agreement is materially incorrect because Claimant had not fully recovered from his work injury, and has not worked due to his work injury since March 4, 2013. Employer denied the allegations. On March 17, 2014, Claimant filed the Review Petition alleging that the Compensation Agreement contained an incorrect injury description and that the NCP should be amended to include rotator cuff tear, proximal biceps tendon tear, labral tear, right shoulder sprain and post-traumatic bursitis of the right shoulder. The Petitions were consolidated, and hearings were held on August 26 and October 28, 2013, and on March 24, April 28 and May 27, 2014.

On July 7, 2015, the WCJ granted Claimant's Review Petition in part, and amended his injury description to include a right shoulder rotator cuff tear, right proximal biceps tendon tear, and a right shoulder sprain, denied the Reinstatement Petition, but ordered that the Compensation Agreement be modified to read that Claimant's WC benefits were "suspended" as of March 4, 2013, rather than "terminated." WCJ Dec. at 20. The WCJ further directed that "inasmuch as the right shin contusion is resolved, this condition be removed from the accepted description

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1-1041.4, 2501-2708.

2

of injury." *Id.* Claimant appealed to the Board. On June 21, 2016, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[2]

Claimant first argues that substantial evidence does not support the WCJ's determination that the Compensation Agreement was not materially incorrect because it stated that Claimant returned to his pre-injury position on March 4, 2013 when he did not work that day because Employer sent him home; thus, it reflected that his benefits were terminated when they should only have been suspended. We disagree.

Initially, Section 413 of the Act provides:

> A [**WCJ**] **may, at any time, review and modify or set aside** a[n NCP] and **an original** or supplemental **agreement** or upon petition filed by either party with the [D]epartment [of Labor and Industry], or in the course of the proceedings under any petition pending before such [WCJ], **if it be proved that such** [NCP] or **agreement was in any material respect incorrect**.

77 P.S. § 771 (emphasis added). Section 403 of the Act states, in relevant part:

> On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this [A]ct; but **any agreement** made prior to the seventh day after the injury shall have occurred, or **permitting a commutation of payments contrary to the provisions of this** [**A**]**ct**, or varying the amount to be paid or the period during which compensation shall be payable as provided in this [A]ct, **shall be wholly null and void**. It shall be unlawful for any employer to accept a receipt showing the payment of compensation when in fact no such payment has been made.

77 P.S. § 731 (emphasis added).

---

[2] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

3

Claimant cites *Fulton v. Workers' Compensation Appeal Board (School District of Philadelphia),* 707 A.2d 579 (Pa. Cmwlth. 1998), to support his position. In *Fulton*, the claimant received total disability benefits of $285.30 per week prior to April 9, 1992, pursuant to an NCP which acknowledged a work-related back injury and a $427.95 wage loss. On April 9, 1992, the parties executed a stipulation that provided for the reduction of the claimant's benefits from total to partial disability **based on the parties' agreement that the claimant was able to return to work** with only a $75.00 wage loss, yet also acknowledged that he remained out of work and without income. The claimant also asserted that, as of April 9, 1992, **the only record evidence was his unrefuted testimony that he continued to suffer residuals from his work injury, that he remained out of work and that he continued to receive medical treatment related to his work injury**. Thus, **the claimant contended that the stipulation was false or incorrect** and was, therefore, null and void. However, the WCJ found the claimant not credible and determined that the claimant failed to prove that he was totally disabled as of April 9, 1992 when the board granted the commutation.

The *Fulton* Court held:

> Our review of the record reveals that the WCJ's finding that [the c]laimant was fully recovered from his work-related injury as of December 11, 1990 was supported by substantial evidence mainly in the form of [the employer's expert's] testimony. Based on that finding, the WCJ was free to conclude that [the c]laimant was not totally disabled on April 9, 1992 when he agreed to the commutation of his benefits. Because [the c]laimant failed to show that the commutation agreement was contrary to the Act, the WCJ properly denied [the c]laimant's reinstatement petition.

*Fulton,* 707 A.2d at 583.[3]

---

[3] Although the WCJ treated the claimant's argument as if he was asserting an **incorrect** agreement under Section 413 of the Act, the claimant argued an **illegal** agreement under Section

Here, Claimant contends that the Compensation Agreement was materially incorrect because it stated that he returned to his pre-injury position on March 4, 2013 when, in fact, Employer sent him home that day. He further asserts that the Compensation Agreement states that his WC benefits were terminated when they were actually suspended. However, as in *Fulton,* the WCJ here found "Claimant not to be credible." WCJ Dec. at 16. Rather,

> [t]his [WCJ], having reviewed the evidence of record as a whole, hereby finds the testimony of [Arthur J. Gallagher's[4] Vice President of WC claims] Cynthia Caslin [(Caslin)] to be credible and unrebutted by other evidence of record. Her testimony is also consistent with the documentary evidence that she produced which was attached to her deposition.
>
> The [WCJ], having reviewed the evidence of record as a whole, hereby finds the testimony of [Employer's human resources' assistant director] Amy Favretto [(Favretto)] and [Employer's sanitation foreman] John Zahner [(Zahner)] as credible. These witnesses were consistent with each other and with other evidence of record. Moreover, as to the issues regarding Claimant's return to work on March 4, 2013, and the events thereafter, the [WCJ] finds each credible because as a supervisor and Assistant HR Manager, each has better knowledge of Employer's policies and business practices than Claimant.

WCJ Dec. at 15-16.

Specifically, Zahner testified that Claimant was released to return to work on March 4, 2013 as far as his shoulder injury was concerned. *See* Notes of Testimony (N.T.) February 11, 2014, Ex. D-1 at 11-12. He was not, however, released to return to work from his non-work injuries, *inter alia,* Claimant's ankle surgeries.[5] Accordingly, Zahner told Claimant he could not return to work until he

---

407 of the Act, 77 P.S. § 731. In the instant case, Claimant argued under both Sections 407 and 413 of the Act.

[4] Arthur J. Gallagher is Employer's WC insurance carrier.

[5] Zahner explained that he "had known from [Claimant] telling him that he got both ankles operated on." N.T. February 11, 2014, Ex. D-1 at 12. Zahner further expounded: "Well, at that

was released to return to work on **all** of his injuries. *See* N.T. February 11, 2014, Ex. D-1 at 15, 17. Zahner further testified that on March 5, 2013 he recommended that Claimant apply for leave under the Family and Medical Leave Act (FMLA)[6], since it did not appear that he would be returning to work. *See* N.T. February 11, 2014, Ex. D-1 at 17-18.

> Moreover, Favretto testified:
>
> Q. [Brian S. Frantum, Esquire (Frantum)] [] What was your understanding of [Claimant's] condition and ability to return to work on March 4, 2013?
>
> A. [Favretto] We received a note from his doctor that he was released to return to work for his shoulder, [WC] March 4, 2013. And he was going to return to work based on that. We did not ask him for that note. He brought it to us.
>
> Q. [] And what did you do with that information the[n]?
>
> A. I forwarded it onto [sic] our [WC] carrier, . . . and advised them that he would be returning to work. And they prepared the final check and the [WC] documents . . . .

N.T. February 11, 2014, Ex. D-2 at 9. With regard to the FMLA, Favretto related:

> Q. [] Did you receive a response from [Claimant] with regard to the [FMLA]?
>
> A. I did. His doctor returned the certification form, which was requested, essentially putting him on [leave under the FMLA] with a given date, an explanation of what his medical [sic] was, and generally the doctor will put [a] return-to-work date or an expected return-to-work date.
>
> . . . .

---

point I said, 'how about your ankles?' You know, 'you had an operation on your ankle [sic]. Are you qualified to do this work?' Especially when he said he needed a cane. That he needed, you know, clearance on that." *Id.*

[6] 29 U.S.C. §§ 2601–2654.

Q. [] And did . . . Dr. Elia provide you with a reason why [leave under the FMLA] was necessary for [Claimant] at that time?

A. Sure. In here he said that he has meniscus tears, cellulitis, abscess of his legs, and that he must undergo additional physical therapy and reconditioning.

Q. And this was regarding his ankles or some such?

A. Correct.

Q. [] Is there – Did Dr. Elia mention anything about the shoulder injury that the Claimant had previously had?

A. There was no mention of the [WC] shoulder injury. Or any injury.

N.T. February 11, 2014, Ex. D-2 at 13-15, Ex. 2.

Finally, regarding Employer's use of the word "terminated" in the Compensation Agreement, Caslin explained:

Q. [Frantum] Claimant has indicated that the word terminated is materially incorrect.

Were you the one that put the word terminated in the [Compensation A]greement?

A. [Caslin] Yes.

Q. [] And does the word terminated reflect the current status of [Claimant's WC] claim as you are administering it?

A. No it does not.

Q. Do you know why the word is included in this [Compensation A]greement?

A. At the time we had a full release. . . .

We took a look at the medical and continued to pay medical benefits.

N.T. April 25, 2014, Ex. D-3 at 10. Caslin further expounded:

Q. [Joseph Hutteman, Esquire] Ma'am, you indicated that the word termination was not the correct term to be used in this document, correct?

A. Correct.

Q. What you meant, I assume, was that his [WC] benefits were to be suspended?

A. Yes, suspended.

Q. You said nonetheless, that you had evidence of a full recovery.

I am trying to figure [sic] whether you meant to say terminated or meant to say suspended.

[Frantum] I think what the witness said, and I could get the court reporter to read it back, was that there was a full release.

[Caslin] Right. **There was a full release**. **I didn't indicate full recovery**.

*Id.* at 14 (emphasis added).

The WCJ expressly opined:

The [WCJ] hereby finds that the [Compensation Agreement] is not materially incorrect as Claimant claims. The [WCJ] finds that the inclusion of the word 'terminated' was a simply word [sic] error and should be merely modified to read 'suspended' inasmuch as this accura[tely] reflects the current state of Claimant's benefits claim. Moreover, the [WCJ] does not find it incorrect that Claimant returned to his pre-injury job, inasmuch as this accurately reflects the facts. Claimant did in fact return from the standpoint of his work injury, and did not remain working for reasons unrelated to his work injury.

WCJ Dec. at 18. The Board concluded: "These findings do have support in the record." Board Op. at 15. After a thorough review of the record, this Court agrees with the Board that substantial evidence supports the WCJ's determination.

8

Because a "[WCJ] may, at any time, review and modify or set aside . . . an original . . . agreement . . . if it be proved that such . . . agreement was in any material respect incorrect" and, here, the WCJ determined that the Compensation Agreement was not materially incorrect as far as Claimant's return to work and modified the Compensation Agreement to accurately reflect that Claimant's WC benefits were suspended rather than terminated, we discern no error in the Board's order affirming the WCJ's decision. 77 P.S. § 771.

Claimant next argues that the WCJ erred by failing to award litigation costs to Claimant for partially prevailing during the litigation because the WCJ granted his Review Petition and amended the recognized work injury. We disagree.

Section 440(a) of the Act[7] provides:

> In any contested case where the insurer has contested liability in whole or in part, . . . the employe . . . , in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, **in addition to the award for compensation,** a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That **cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer** or the insurer.

77 P.S. § 996(a) (emphasis added). However,

> the WCJ awarded Claimant no financial benefit beyond the medical expenses Employer previously agreed to pay. Under these circumstances, Claimant's entitlement to medical benefits does not warrant an award of litigation costs. *Cf. Amoratis v. Workers' Comp. Appeal Bd. (Carolina Freight Carriers)*, 706 A.2d 368 (Pa. Cmwlth. 1998) (an award of litigation costs is not warranted where a claimant received no financial benefit from litigation).

---

[7] Added by Section 3 of Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996.

*Watson v. Workers' Comp. Appeal Bd. (Special People in Ne.),* 949 A.2d 949, 955-56 (Pa. Cmwlth. 2008). Similarly, in the instant case, the WCJ did not award Claimant any financial benefit. Moreover, the WCJ concluded that "Employer ha[d] presented a reasonable contest." WCJ Dec. at 19. Accordingly, the Board properly affirmed the WCJ's decision not to award Claimant litigation costs.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Murphy,                          :
                    Petitioner           :
                                         :
              v.                         :
                                         :
Workers' Compensation Appeal             :
Board (Upper Darby Township),            :      No. 1208 C.D. 2016
                    Respondent           :

## O R D E R

AND NOW, this 28th day of March, 2017, the Workers' Compensation Appeal Board's June 21, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge