IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Halpin,                              :
                        Petitioner          :
                                            :
        v.                                  :    No.  647 C.D. 2021
                                            :    Submitted:  October 29, 2021
City of Philadelphia (Workers'              :
Compensation Appeal Board),                 :
                        Respondent          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE J. ANDREW CROMPTON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                           FILED:  December 23, 2021


        Daniel Halpin (Claimant) petitions this Court for review of the May 18, 2021 Order of the Workers' Compensation Appeal Board (the Board) reversing the May 11, 2020 decision of the workers' compensation judge (WCJ) that granted Claimant's Petition to Reinstate Compensation Benefits (Reinstatement Petition). Before this Court, Claimant argues that the Board applied the wrong legal standard for setting aside an approved stipulation when it reversed the WCJ's decision. The City of Philadelphia (Employer) maintains that the Board correctly reversed the WCJ's decision because Claimant provided insufficient evidence under the law to meet the burden for the parties' previous Stipulation of Facts (Stipulation) to be set aside. Upon consideration, we affirm the Board's Order.

## I.     Background

On April 8, 2017, Claimant was injured in the course of his employment as a police officer for Employer when a light fixture exploded, discharging gas and particles into his face and lungs. At the time of his injury, Claimant had been working for Employer for four-and-a-half years. Reproduced Record (R.R.) at 21a. In its filing of an Amended Notice of Compensation Payable (NCP) on July 25, 2017, Employer described the injury as "respiratory disorder/chest (lungs)." *Id.* at 9a, 136a. Under the Amended NCP, Claimant was paid wage loss benefits at the weekly rate of $995.00 based upon an average weekly wage of $1,493.46. *Id.* at 144a.

The parties entered into and signed the Stipulation on January 22, 2018, which was approved by a WCJ on February 22, 2018. *Id.* In the Stipulation, Claimant agreed that as of December 20, 2017, he had fully recovered from his April 8, 2017 work injuries and was released to return to full-duty work by Dr. Rocco Costabile. *Id.* at 9a. The Stipulation also provided:

> 5. The parties further stipulate that with the approval of this [S]tipulation into a formal decision, all issues associated with the pending Suspension Petition, Reinstatement Petition and Penalty Petition shall be resolved.

> 6. The parties stipulate and agree that [Claimant] gives up his right to file a future petition seeking to have the April 8, 2017 work injury expanded in any way.

*Id.* In her decision adopting the Stipulation, the WCJ found that "Claimant understands the [Stipulation] and the effect that this Stipulation has on payments of workers' compensation [(WC)] benefits." *Id.* at 7a. The Stipulation became final as of February 22, 2018, and it was never appealed by either party.

2

On April 2, 2019, Claimant filed a Reinstatement Petition. *Id.* at 1a-4a. In the Reinstatement Petition, Claimant alleged a "worsening of condition." *Id.* at 1a. On October 16, 2019, a hearing was held before a WCJ, and Claimant testified to his "worsening condition" in the following exchange:

> [Counsel:] What sort of issues have you had with your breathing since this injury occurred?
>
> [Claimant:] I have shortness of breath. I have severe fatigue. I have where - tightness in my chest to the point where, sometimes it scares me. And I went to the [emergency room] a couple of times in the last few sixth [sic] months for it. And, you know, they treated me with acute asthma. And I've been diagnosed with [Reactive Airways Dysfunction Syndrome (RADS)] and chemical inhalation and a whole bunch of different diagnosis [sic], but I'm just very fatigued very easily. And I have a lot of shortness of breath.

Hr'g Tr., 10/16/2019, at 13; R.R. at 23a. Claimant also stated that he was not fully recovered from his injuries at the time he entered into the Stipulation, despite the fact that he had been released from the care of his doctors. Hr'g Tr., 10/16/2019 at 14-15; R.R. at 24a-25a.

Based on Claimant's description of his lack of recovery at the time of the Stipulation, the WCJ inquired further:

> [Counsel:] Why did you sign [the Stipulation], sir?
>
> [Claimant:] Because I was advised by my [Fraternal Order of Police (FOP)] Vice President Representative, John McGurrity. And I was also advised by my - I hired a - you know, reinstatement Attorney Cash Cashian. And he advised me, as well as, you know, my [WC] attorney, Mike Mulvey all stated had [sic] that in order for me to ever get my police job, you know, get back to work, I was to have to sign this documentation. Stating that, you know, I'm recovered in order to reapply for reinstatement with the commissioner, because I have up to a year to get reinstated. So that in order to do that, that's what they advised me to do.

Hr'g Tr., 10/16/2019, at 15; R.R. at 25a. Claimant also explained that at the time he entered into the Stipulation, he had "resigned" from Employer to "get [his] family situation resolved" because he was "under a lot of stress." Hr'g Tr., 10/16/2019, at 33-34; R.R. at 43a-44a.

Throughout his testimony, Claimant stated that he had been treating consistently with a medical professional, specifically Dr. Steven Geller, D.O. However, on cross-examination, Claimant testified that he only saw Dr. Geller for the first time on May 17, 2019. Hr'g Tr., 10/16/2019, at 19; R.R. at 29a.

On August 23, 2019, Dr. Geller, a specialist in pulmonary medicine, was deposed in Claimant's Reinstatement Petition proceedings. At the deposition, Dr. Geller was questioned about the extent of his treatment of Claimant as follows:

> [Ms. Merkin:] You actually are not the treating pulmonologist for [C]laimant; is that correct?
>
> [Dr. Geller:] Correct.
>
> [Ms. Merkin:] You are basically [C]laimant's IME [independent medical examination]; is that correct?
>
> [Dr. Geller:] Correct.
>
> [Ms. Merkin:] And you saw [C]laimant only one time; is that correct?
>
> [Dr. Geller:] Correct.

R.R. at 68a. As a result, the WCJ found that Dr. Geller was not Claimant's "treating pulmonologist." WCJ Decision, 05/11/2020, Findings of Fact (F.F.), No. 7b.

Ultimately, the WCJ found:

> The testimony of [] Claimant has been reviewed and considered in its entirety[,] is found to be competent, persuasive, given great weight for belief and found to be credible[,] supported by his observed demeanor.

4

[] Claimant's credibility is supported by medical evidence and by the fact that he was able prior to the work injury to do his police officer duties without restriction and immediately as a result of the work injury he developed complaints that caused him ongoing an inability to perform his police officer duties as well as limited his activities of daily living due to the continued ongoing worsening symptoms from the work injury. [] Claimant at the time of January 22, 2018 signing of the Stipulation, continued to treat for ongoing symptoms from the work injury and misunderstood the impact the signing of the Stipulation would have on his ability to continue working as a police officer. [] Claimant's testimony is particularly credible regarding why he signed the stipulation.

F.F. No. 8. The WCJ then concluded that Claimant met his burden on the Reinstatement Petition and that the Stipulation "was based on a unilateral mistake of fact and is set aside accordingly." WCJ Decision, 05/11/2020, Conclusions of Law (C.L.) No. 2.

On May 18, 2020, Employer filed an appeal with the Board requesting supersedeas. The Board ruled on supersedeas on June 17, 2020, granting supersedeas, in part, as the request related to unreasonable contest attorney fees. On May 18, 2021, the Board issued its Opinion and Order, reversing the WCJ's May 11, 2020 decision.

In its Opinion, the Board opined:

Upon review, we cannot agree that Claimant met his burden in support of a unilateral mistake allowing the [S]tipulation to be set aside. If a party knows or has reason to know of a unilateral mistake by the other party, and the mistake and the actual intent of the parties are clearly shown, a unilateral mistake will be treated like a mutual mistake. *Hoang* [*v. Workers' Comp. Appeal Bd. (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905 (Pa. Cmwlth. 2012)].

. . . .

5

[W]e reverse.[1]   A claimant seeking a reinstatement following a termination of benefits must establish that his physical condition has actually changed. *Pieper* [*v. Ametek-Thermox Instruments Div.*, 584 A.2d 301 (Pa. 1990), *overruled on other grounds by Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548 (Pa. 2010)]. The change must be proven by precise and credible evidence, and must be shown to have occurred after the date of full recovery. *Nat'l Fiberstock Corp.* [*(Greater N.Y. Mut. Ins. Co.) v. Workers' Comp. Appeal Bd. (Grahl)*, 955 A.2d 1057 (Pa. Cmwlth. 2008)]. Claimant did not testify that his condition became worse after the date when he stipulated to full recovery, Dr. Geller acknowledged Claimant's pulmonary symptoms were basically the same in December 2017[,] and May 2019, and that he had no records from Claimant's previous physicians. Dr. Geller did not testify that Claimant's condition became worse. Claimant therefore did not meet his burden in support of reinstatement.

Bd. Op., 05/18/2021, at 4, 7; R.R. at 153a, 156a. Claimant now petitions this Court for review.[2]

## II.   Discussion

Before this Court, Claimant argues that the Board's decision to reverse the granting of the Reinstatement Petition to set aside a "materially incorrect stipulation of fact" was wrong as a matter of law. Claimant's Br. at 12. Specifically,

---

[1] In its Opinion, the Board also noted:

[Employer] argues that the WCJ erred in awarding counsel fees for unreasonable contest. Because we have reversed the WCJ's order, Claimant is no longer a prevailing party and is not entitled to an award of counsel fees for unreasonable contest.

Bd. Op., 05/18/2021, at 7; R.R. at 156a. Because neither party addresses the issue of counsel fees before this Court, we do not address this matter.

[2] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011).

Claimant asserts that the Board incorrectly applied a "section" of the Workers' Compensation (WC) Act (the Act)[3] and "case law" addressing "the standard in overturning compromise and release agreements while this case involved a [Stipulation] about full recovery." *Id.* Employer maintains that the Board properly reversed the WCJ's granting of the Reinstatement Petition.

Claimant relies exclusively on our Court's holding in *Fulton v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 707 A.2d 579 (Pa. Cmwlth. 1998), to support his claim that the Board applied the "wrong" law. Claimant's Br. at 12-13. In *Fulton*, a claimant sought to have his stipulation and commutation set aside and his benefits reinstated. *Id.* He argued that the stipulation and commutation were untrue and inaccurate because he allegedly remained totally disabled. *Id.* The WCJ dismissed the reinstatement petition because the claimant failed to prove the stipulation he signed was materially incorrect or false. *Id.* The claimant then appealed to the Board and argued that the prior settlement agreement was null and void because it allegedly violated Section 407 of the Act, 77 P.S. § 731.[4] *Id.* The Board affirmed the WCJ's decision, and

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[4] Section 407 of the Act reads:

On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this act; but any agreement made prior to the seventh day after the injury shall have occurred, or permitting a commutation of payments contrary to the provisions of this act, or varying the amount to be paid or the period during which compensation shall be payable as provided in this act, shall be wholly null and void. It shall be unlawful for any employer to accept a receipt showing the payment of compensation when in fact no such payment has been made.

Claimant appealed to our Court. *Id.* Applying *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.)*, 604 A.3d 1204 (Pa. Cmwlth. 1992), our Court determined that the claimant did not meet his burden to show that a mistake of fact or law was made when the commutation agreement was executed. *Fulton*, 707 A.2d at 583. Thus, in the instant case, while Claimant selectively cites *Fulton* as evidence that the Board's decision was improper, the facts of *Fulton* in their entirety indicate otherwise.

Before this Court, Claimant asserts that the Board erred in reversing the WCJ's decision because it relied on case law and provisions of the Act related to compromise and release agreements as opposed to a stipulation of the kind at issue here. However, relief may be granted under a section of the Act different from that invoked, provided that the relief is appropriate based on the evidence presented.

Where payment of compensation is commenced without an agreement, the employer or insurer shall simultaneously give notice of compensation payable to the employe or his dependent, on a form prescribed by the [Department of Labor and Industry (department)], identifying such payments as compensation under this act and shall forthwith furnish a copy or copies to the department as required by rules and regulations. It shall be the duty of the department to examine the notice to determine whether it conforms to the provisions of this act and rules and regulations hereunder.

All agreements made in accordance with the provisions of this section shall be on a form prescribed by the department, signed by all parties in interest, and a copy or copies thereof forwarded to the department as required by rules and regulations. It shall be the duty of the department to examine the agreement to determine whether it conforms to the provisions of this act and rules and regulations hereunder.

All notices of compensation payable and agreements for compensation and all supplemental agreements for the modification, suspension, reinstatement, or termination thereof, and all receipts executed by any injured employe of whatever age, or by any dependent to whom compensation is payable under section three hundred and seven, and who has attained the age of sixteen years, shall be valid and binding unless modified or set aside as hereinafter provided.

*Hartner*. Thus, upon applying standards of both mutual and unilateral mistake to the Stipulation, the Board determined that Claimant failed to provide sufficient evidence to support either principle.

"Courts may rescind [an] agreement based on a clear showing of fraud, deception, duress, or mutual mistake." *Hoang*, 51 A.3d at 908-09 (citing *N. Penn Sanitation, Inc. v. Workers' Comp. Appeal Bd. (Dillard)*, 850 A.2d 795, 799 (Pa. Cmwlth. 2004)). "However, the party seeking to set aside the agreement has the burden of proof, and the test to set aside . . . on the basis of mistake is more stringent than for fraud or duress." *Id.* "Indeed, evidence demonstrating a mutual mistake must be clear, precise[,] and indubitable." *Id.* (citing *Thrasher v. Rothrock*, 105 A.2d 600 (Pa. 1954) (holding that evidence of a confusing dictation of contract terms was not clear, precise, and indubitable evidence of a mutual mistake)).

"Generally, a unilateral mistake which is not caused by the fault of the opposing party affords no basis for relief." *Farner v. Workers' Comp. Appeal Bd. (Rockwell Int'l)*, 869 A.2d 1075, 1079 n.5 (Pa. Cmwlth. 2005) (citing *Welsh v. State Emps'. Ret. Bd.*, 808 A.2d 261 (Pa. Cmwlth. 2002)). "However, 'if a party to a contract knows or has reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed.'" *Id.* (quoting *Welsh*, 808 A.2d at 265.). "Without supporting evidence and a finding of actual intent, it is impossible for the claimant to carry [his] burden under the doctrine of unilateral mistake." *Id.*

Accordingly, the Board analyzed whether Claimant had met his burden of demonstrating the existence of a unilateral mistake between Claimant and Employer in executing the Stipulation. Before the WCJ, Claimant testified that he

9

signed the Stipulation under a belief that an agreement of this type detailing his injury recovery was necessary to seek further employment with Employer. *See* Hr'g Tr., 10/16/2019, at 15; R.R. at 25a. However, Claimant did not provide evidence that Employer was aware of Claimant's plan to resign from his job as an active-duty police officer and subsequently enter into the Stipulation with the intent to return to work in another role with Employer. *See* Bd. Op., 05/18/2021, at 4; R.R. at 153a. Further, Claimant was unable to provide any evidence that he discussed this plan with Employer or its representatives prior to the parties signing the Stipulation. *Id.* As a result, Employer had no reason to know of Claimant's alleged unilateral mistake, including his intent, when agreeing to the Stipulation. *Id.*

Therefore, the Board correctly determined that the WCJ erred in setting aside the Stipulation because Claimant did not meet his burden to demonstrate the existence of a unilateral mistake. *Id.* Additionally, because the Board appropriately reinstated the Stipulation, it was both unnecessary and improper to grant Claimant's Reinstatement Petition as the Stipulation precluded Claimant from receiving further WC benefits. *See* R.R. at 9a. In the absence of evidence to demonstrate the contrary, a unilateral mistake did not exist to invalidate the parties' Stipulation as approved by a WCJ on February 22, 2018.

### III. Conclusion

Discerning no error below, we affirm the Board's Order.

_____
J. ANDREW CROMPTON, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Halpin,            :
          Petitioner    :
                        :
      v.                :    No. 647 C.D. 2021
                        :
City of Philadelphia (Workers'   :
Compensation Appeal Board),   :
          Respondent   :

# **O R D E R**

**AND NOW**, this 23rd day of December 2021, we **AFFIRM** the May 18, 2021 Order of the Workers' Compensation Appeal Board reversing the decision of the workers' compensation judge that granted Daniel Halpin's Petition to Reinstate Compensation Benefits.

_____
J. ANDREW CROMPTON, Judge